EDWARD R. HOUSTON AND REGINA HOUSTON, APPELLANTS, *v.* BANK OF AMERICA FEDERAL SAVINGS BANK, RESPONDENT.

No. 36564

October 28, 2003 78 P.3d 71

*Robison Belaustegui Sharp & Low* and *F. De Armond Sharp* and *Natalie J. Reed,* Reno, for Appellants.

*McDonald Carano Wilson McCune Bergin Frankovich & Hicks LLP* and *Andrew P. Gordon* and *Jeffrey A. Silvestri,* Las Vegas, for Respondent.

*Charles T. Cook,* Las Vegas; *Reinhart Boerner Van Deuren* and *J. Bushnell Nielsen,* Milwaukee, Wisconsin, for Amicus Curiae Nevada Land Title Association.

Before SHEARING, LEAVITT and BECKER, JJ.

## OPINION

*Per Curiam:*

This appeal raises the issue of whether a lender who pays off a prior note is equitably subrogated to the former lender's priority lien position. We conclude that the subsequent lender succeeds to the prior lender's priority lien position as long as an intervening lien holder is not prejudiced. Therefore, we affirm the district court's order granting summary judgment to Bank of America.

### FACTS

Appellants, Edward R. Houston and Regina Houston, paid David Boone $740,000 for investment services. Boone converted the $740,000 to his own use. Shortly thereafter, on May 13, 1998, Boone and his wife Donna divorced. Pursuant to their property settlement agreement, Boone quitclaimed to Donna the real property located at 2100 Marina Bay Court, Las Vegas, Nevada (the property). At the time of the divorce, Norwest Mortgage, Bank of America's predecessor, held a deed of trust on the property for approximately $342,000.

On May 14, 1998, the Houstons filed a complaint against Boone to recover their $740,000.[1] On June 1, 1998, the Houstons filed a notice of lis pendens on the property in the Clark County Recorder's Office. The Houstons also filed an ex parte motion for an order directing the issuance of a prejudgment writ of attachment, which the district court granted. Early on June 26, 1998, the writ of attachment was filed in the Clark County Recorder's Office. Ultimately, the Houstons obtained a judgment against Boone for $740,000. Boone filed for bankruptcy, but eventually stipulated that the money he owed the Houstons was a nondischargeable debt. The district court granted the Houstons a writ of execution on the property and scheduled a sale of the property. Bank of America intervened and the sale was enjoined.

Bank of America had refinanced the property for Donna on June 26, 1998, after the Houstons' writ of attachment was recorded. Bank of America had hired Nevada Title Company to perform a title search of the property, which was conducted on May 29, 1998, over a month before the refinancing.

---

[1]Later, the Houstons amended their complaint and added Donna Boone as a defendant.

After the district court enjoined the sale, both Bank of America and the Houstons filed motions for summary judgment. Bank of America argued that it held the priority lien on the property because it succeeded to the rights of Norwest. The Houstons contended, among other things, that Bank of America was negligent in failing to discover their interest in the property and that they would suffer an injury if the district court allowed Bank of America to succeed to Norwest's priority position. However, the Houstons did not provide the district court with the terms of the former deed of trust or any other evidence of prejudice. The district court granted summary judgment in favor of Bank of America and denied the Houstons' motion for summary judgment.

The Houstons appeal.

## DISCUSSION

This court reviews summary judgment orders de novo.[2] Summary judgment is warranted when the record, viewed in a light most favorable to the non-moving party, indicates no triable issues of material fact and that the moving party is entitled to judgment as a matter of law.[3] The principal issue in this case is whether the district court properly applied the doctrine of equitable subrogation.

Equitable subrogation permits ''a person who pays off an encumbrance to assume the same priority position as the holder of the previous encumbrance.''[4] We have previously applied the doctrine of equitable subrogation, but not in the context presented by this case.[5] Other jurisdictions have adopted three different approaches[6] in determining whether to apply equitable subrogation under circumstances in which a third party held a lien on the property at the time the second lender paid off the former encumbrance.[7]

---

[2]*University of Nevada, Reno v. Stacey*, 116 Nev. 428, 431, 997 P.2d 812, 814 (2000).

[3]NRCP 56(c); *Auckenthaler v. Grundmeyer*, 110 Nev. 682, 684, 877 P.2d 1039, 1040 (1994).

[4]*Mort v. U.S.*, 86 F.3d 890, 893 (9th Cir. 1996).

[5]*See, e.g., Laffranchini v. Clark*, 39 Nev. 48, 55-56, 153 P. 250, 251-52 (1915) (concluding that the holder of an invalid mortgage was not a volunteer, and thus, entitled to be equitably subrogated to the priority position of the lender whose loan it had paid).

[6]Although there are generally three approaches the courts have adopted, some courts refuse to adopt a bright-line rule and simply consider constructive or actual knowledge as a factor in weighing the equities. *See, e.g., East Boston Sav. Bank v. Ogan*, 701 N.E.2d 331, 335 (Mass. 1998) (refusing to adopt a bright-line rule regarding subrogee knowledge).

[7]*Id.* (recognizing the three approaches the courts have adopted in examining whether a subrogee's knowledge of an existing lien precludes equitable subrogation).

The first approach, which a majority of states follow, is that actual knowledge of an existing lien precludes the application of equitable subrogation, but constructive knowledge does not.[8] The reasoning underlying this approach is that if a mortgagee did not possess actual notice of a junior lien holder, the mortgagee expected to step into the shoes of the previous creditor it had paid off.[9] In our view, however, this rule promotes willful ignorance; it encourages prospective mortgagees to avoid conducting title searches. Under this approach, if a prospective mortgagee performs a title search and discovers a junior lien holder, it will be barred from being subrogated. However, if a prospective mortgagee forgoes conducting a search, which would have uncovered a junior lien holder, and puts on blinders, it nevertheless will be subrogated. Thus, we decline to adopt this approach.

The second approach bars the application of equitable subrogation when a lien holder possesses either actual or constructive notice of an existing lien.[10] However, precluding equitable subrogation when a mortgagee discovered or could have discovered a junior lien holder runs contrary to the purposes underlying the doctrine.

[8]*Osterman v. Baber,* 714 N.E.2d 735, 739 (Ind. Ct. App. 1999) (recognizing that the majority of jurisdictions hold that actual knowledge bars equitable subrogation, but constructive notice does not, but declining to adopt the majority view); *Rusher v. Bunker,* 782 P.2d 170, 172 (Or. Ct. App. 1989) (acknowledging that the weight of authority is that constructive knowledge alone does not preclude equitable subrogation); *Restatement (Third) of Property: Mortgages* § 7.6 cmt. e (1997); *see, e.g., U.S. v. Baran,* 996 F.2d 25, 29 (2d Cir. 1993) (applying New York law); *Dietrich Industries, Inc. v. U.S.,* 988 F.2d 568, 572 (5th Cir. 1993) (applying Texas law); *Brooks v. Resolution Trust Corp.,* 599 So. 2d 1163, 1165 (Ala. 1992); *Smith v. State S & L Ass'n,* 223 Cal. Rptr. 298, 301 (Ct. App. 1985); *United Carolina Bank v. Beesley,* 663 A.2d 574, 576 (Me. 1995); *Enterprise Bank v. Federal Land Bank,* 138 S.E. 146, 148-50 (S.C. 1927).

[9]George E. Osborne, *Mortgages* § 282, at 573 (2d ed. 1970).

[10]*See Harms v. Burt,* 40 P.3d 329, 332 (Kan. Ct. App. 2002); *see also Independence One Mortg. v. Katsaros,* 681 A.2d 1005, 1007-08 (Conn. App. Ct. 1996). Additionally, some courts hold a sophisticated party to a higher standard in determining whether to apply equitable subrogation. *See, e.g., Universal Title Ins. Co. v. U.S.,* 942 F.2d 1311, 1317 (8th Cir. 1991) (noting that ''Minnesota courts impose stricter standards on professionals than lay persons in assessing whether mistakes are 'excusable' for purposes of the doctrine of legal subrogation''). Also, other courts hold that negligence in discovering an existing encumbrance bars equitable subrogation or at least consider a party's negligence in determining whether to apply equitable subrogation. *See Bankers Trust Co. v. U.S.,* 25 P.3d 877, 882 (Kan. Ct. App. 2001); *Landmark Bank v. Ciaravino,* 752 S.W.2d 923, 929 (Mo. Ct. App. 1988); *Uslife Title Ins. Co. of Dallas v. Romero,* 652 P.2d 249, 252 (N.M. Ct. App. 1982); *Kim v. Lee,* 31 P.3d 665, 671-72 (Wash.), *as corrected,* 43 P.3d 1222 (Wash. 2001). However, in a number of these cases negligence merely appears to be another rationale for holding that constructive notice bars equitable subrogation. *See, e.g., Kim,* 31 P.3d at 671-72.

Equitable subrogation is an equitable remedy to avoid a person's receiving an unearned windfall at the expense of another.[11] If there were no subrogation, a junior lien holder would be promoted in priority, giving that creditor/lien holder an unwarranted and unjust windfall.[12] Neither negligence nor constructive notice of an existing lien is relevant as to whether the junior lien holder will be unjustly enriched or prejudiced. The "basis for subrogation in [the mortgage] context is the lender's justified expectation of receiving [a] security" interest in the property.[13] Even a lender with knowledge of an existing lien on the property ordinarily expects to step into the shoes of the creditor it paid off.[14] Therefore, we also decline to adopt this approach.

The third approach, the view adopted by section 7.6 of the *Restatement (Third) of Property: Mortgages,* disregards actual or constructive notice if the junior lien holder is not prejudiced.[15] Under the *Restatement,* a mortgagee will be subrogated when it pays the entire loan of another as long as the mortgagee "was promised repayment and reasonably expected to receive a security interest in the real estate with the priority of the mortgage being discharged, and if subrogation will not materially prejudice the holders of intervening interests in the real estate."[16] Because the *Restatement* approach is the most persuasive, we adopt the view expressed by it.

Under the *Restatement,* notice of an intervening lien is not necessarily pertinent to whether a party should be subrogated, and a party can be subrogated even if the party possessed actual knowledge of the other lien holder.[17] Pursuant to the *Restatement,* "[t]he

---

[11]*Restatement (Third) of Property: Mortgages* § 7.6 cmt. a; *Baran,* 996 F.2d at 29.

[12]*Restatement (Third) of Property: Mortgages* § 7.6 cmt. a.

[13]2 Grant S. Nelson & Dale A. Whitman, *Real Estate Finance Law* § 10.6, at 15-16 (4th ed. 2002).

[14]*Restatement (Third) of Property: Mortgages* § 7.6 cmt. e.

[15]*See Suntrust Bank v. Riverside Nat. Bank,* 792 So. 2d 1222, 1227 n.3 (Fla. Dist. Ct. App. 2001) (citing section 7.6 of the *Restatement* to support its decision that negligence in failing to discover an existing lien does not preclude the application of equitable subrogation as long as the existing interest does not suffer prejudice); *see also Trus Joist Corp. v. Nat'l Union Fire Ins. Co.,* 462 A.2d 603, 609 (N.J. Super. Ct. App. Div. 1983) (subrogating mortgagee notwithstanding its possessing actual knowledge of an existing intervening interest), *overruled on other grounds by Trus Joist Corp. v. Treetop Associates, Inc.,* 477 A.2d 817 (N.J. 1984); *Klotz v. Klotz,* 440 N.W.2d 406, 407-10 (Iowa Ct. App. 1989) (subrogating party to senior lien position despite party's having actual knowledge of junior lien holder). These latter two cases do not adopt the *Restatement,* but their holdings are similar to the *Restatement* view.

[16]*Restatement (Third) of Property: Mortgages* § 7.6(a)(4).

[17]*Id.* § 7.6 cmt. e.

question in such cases is whether the payor reasonably expected to get security with a priority equal to the mortgage being paid.''[18] Further, ''[a] refinancing mortgagee should be found to lack such an expectation only where there is affirmative proof that the mortgagee intended to subordinate its mortgage to the intervening interest.''[19]

The *Restatement* reasons that an intervening lien holder will not be materially prejudiced by the application of equitable subrogation because the intervening lien holder will remain in the same position.[20] The *Restatement* notes that ''[t]he holders of intervening interests can hardly complain about this result, for they are no worse off than before the senior obligation was discharged.''[21] Subrogation will not be granted if it would result in injustice or prejudice to an intervening lienor.[22]

In this case, Bank of America fully paid off the former deed of trust on the property held by Norwest. In the district court's order granting Bank of America's motion for a preliminary injunction, it found that Bank of America paid off the entire former mortgage ''with the intention and belief that it would acquire Norwest Mortgage's first-position deed of trust lien on the Property.'' Further, the record does not contain any evidence that Bank of America intended to subordinate its mortgage to the Houstons.[23]

The Houstons argue that there are issues of fact as to whether they will be prejudiced by the equitable subrogation of Bank of America to the priority lien position. Yet the Houstons did not produce any evidence that they would be prejudiced by equitably subrogating Bank of America, nor did they request time to produce such evidence. Both parties agree that Bank of America's loan is $5,000 more than the Norwest deed of trust, and therefore Bank of America is not entitled to equitable subrogation with regard to the $5,000 increase in its loan.

The mortgagor changed from Boone and Donna, to Donna alone, but the Houstons did not offer any evidence that this change prejudiced them. The Houstons did not show that Donna has a

---

[18]*Id.*

[19]*Id.*

[20]*Id.*

[21]*Id.* § 7.6 cmt. a.

[22]2 Nelson & Whitman, *supra* note 13, § 10.6, at 19.

[23]The Houstons maintain that Bank of America should not be equitably subrogated to the priority position because it negligently failed to discover the lis pendens and writ of attachment the Houstons filed. Alternatively, they contend that there are issues of fact as to whether Bank of America was reasonable in relying on a twenty-seven day old title report. However, since we adopt the *Restatement* view, Bank of America's negligence in discovering the lis pendens and writ of attachment or its knowledge thereof is irrelevant.

poor credit rating, makes so little money, or has so few assets that Bank of America will likely have to foreclose on the property, resulting in the Houstons' loss of their interest in the property. The Houstons did not provide the district court with the previous loan's terms to compare with the new loan's terms to determine if there were modifications that materially prejudice the Houstons. Because there is no evidence in the record that the Houstons will be in a worse position than if Bank of America did not pay off the Norwest deed of trust, the district court did not err by granting Bank of America's motion for summary judgment and denying the Houstons' motion.

We affirm the judgment of the district court.