[No. 53692-3-I.   Division One.   April 4, 2005.]

BANK OF AMERICA, N.A., *Appellant*, v. WELLS FARGO BANK, N.A., ET AL., *Respondents*.

*Craig W. Miller*, *Stephen M. Rummage*, and *Rebecca S. Cohen* (of *Davis Wright Tremaine*), for appellant.

*Michael B. King* and *Mark A. Rossi* (of *Lane Powell, P.C.*), for respondents.

¶1 COLEMAN J., — This appeal and cross-appeal involves three banking entities, Bank of America, Wells Fargo Bank, and Wells Fargo Bank West, each of whom holds liens on the same piece of real property after the homeowner secured multiple loans from these institutions over a two-year period. The questions raised here are whether Wells Fargo Bank West may be equitably subrogated to the first place

lien position despite Bank of America's status as an intervening lienholder and whether a contract implied in law existed between Wells Fargo Bank and Bank of America requiring reconveyance of Bank of America's deed of trust to Wells Fargo. We reverse the trial court's grant of equitable subrogation to Wells Fargo Bank West and affirm the trial court's denial of a contract implied in law between Bank of America and Wells Fargo Bank.

## FACTS

¶2  In 1999, Bank of America (BoA) entered into a revolving loan agreement for $400,000 with Sakae Sugihara, secured by a deed of trust on Sugihara's house. The property was already encumbered by a 30-year mortgage financed in 1994 by Washington Mutual (WaMu). In October 2000, BoA entered into a second revolving loan with Sugihara for $1,000,000, secured by an amendment to BoA's original deed of trust on Sugihara's home.

¶3  The following year, in June 2001, Sugihara applied to Wells Fargo Bank for a $500,000 home equity loan, again secured by his house. Sugihara's loan application disclosed the WaMu mortgage and the first BoA loan for $400,000, but not the second loan for $1,000,000. Wells Fargo Bank's preliminary title commitment revealed the BoA amended deed of trust, which caused the bank to initially reject Sugihara's application. When questioned by the Wells Fargo loan officer, Sugihara claimed the second BoA loan had been released. Based on Sugihara's assurances, Wells Fargo approved the loan without seeking confirmation from BoA.

¶4  When the Wells Fargo Bank loan to Sugihara closed in November 2001, Wells Fargo sent a check to BoA for $402,694.43 as a full payment of the first BoA loan. At that time, both BoA loans were already in default. BoA decided not to release their deed of trust because their second loan to Sugihara still had $970,000 outstanding. BoA did not inform Wells Fargo Bank of the decision not to release the deed of trust.

¶5 In November 2001, at the same time the Wells Fargo Bank loan was closing, Sugihara applied for an additional $1,000,000 home equity loan from a separate Wells Fargo Bank entity, Wells Fargo Bank West (WFB West). WFB West's preliminary title commitment showed the BoA deed of trust and the amendment, reflecting both BoA loans. In December 2001, a WFB West loan officer, acting without authorization, approved the loan for closing. WFB West's closing instructions to its escrow agent directed the agent to close the loan without regard to the BoA loans because the WFB West loan officer mistakenly believed that BoA was in the process of reconveying its deed of trust. WFB West did not seek assurances from BoA. WFB West closed the loan, paid off the WaMu 30 year mortgage, and gave the balance to Sugihara.

¶6 BoA sought foreclosure on Sugihara's house because the second BoA loan remained in default. Both Wells Fargo banks counterclaimed, seeking release of the deed of trust from BoA on the ground that BoA had breached a contractual obligation to reconvey the deed of trust after Wells Fargo Bank had paid off the first BoA loan.

¶7 The court held that WFB West should be equitably subrogated to the lien position of WaMu (i.e., first position) in the amount of their payoff of the WaMu loan ($499,477). The court denied Well Fargo Bank's (WFB) claim that BoA be required to reconvey their deed of trust. Both parties appeal.

## DISCUSSION

■ ¶8 *Standard of Review*. BoA challenges the trial court's findings of fact and conclusions of law. In these circumstances, we determine whether the findings of fact are supported by substantial evidence in the record. *Landmark Dev., Inc. v. City of Roy*, 138 Wn.2d 561, 573, 980 P.2d 1234 (1999). Substantial evidence exists if the record contains " 'evidence of sufficient quality to persuade a fair-minded rational person of the truth of the declared premise.' " *World-Wide Video, Inc. v. City of Tukwila*, 117

Wn.2d 382, 387, 816 P.2d 18 (1991) (quoting *Bering v. Share*, 106 Wn.2d 212, 220, 721 P.2d 918 (1986)). We then determine whether the findings of fact support the trial court's conclusions of law. *Landmark*, 138 Wn.2d at 573. Questions of law are reviewed de novo. *Hu Hyun Kim v. Lee*, 145 Wn.2d 79, 86, 31 P.3d 665, 43 P.3d 1222 (2001).

¶9 The first issue on appeal is whether WFB West's lien should be equitably subrogated to WaMu's first lien position in light of BoA's status as an intervening lienholder.

¶10 Washington's recording system is established by RCW 65.08.070.[1] The purpose of the statute is to make a deed recorded first in time superior to any other conveyance of the property, unless a mortgagee has actual knowledge of an unrecorded transfer. *Altabet v. Monroe Methodist Church*, 54 Wn. App. 695, 697, 777 P.2d 544 (1989) (citing *Tacoma Hotel, Inc. v. Morrison & Co.*, 193 Wash. 134, 74 P.2d 1003 (1938)). *See also Hollenbeck v. City of Seattle*, 136 Wash. 508, 514, 240 P. 916 (1925) ("generally, liens take precedence in order of time, the first in time being the first in right"). A deed of trust creates a lien against the property it describes. *John Davis & Co. v. Cedar Glen No. Four, Inc.*, 75 Wn.2d 214, 221-22, 450 P.2d 166 (1969). Equitable subrogation provides an exception to the first in time rule by permitting a person who pays off an encumbrance to assume the same lien priority position as the holder of the previous encumbrance. *Houston v. Bank of Am. Fed. Sav. Bank*, 119 Nev. 485, 78 P.3d 71, 73 (2003). As an equitable remedy, subrogation is designed to avoid one person receiving an unearned windfall, i.e., the intervening lienholder through an advancement in priority, at the expense of another, i.e., the new mortgagee who paid the prior debt.

---

[1] RCW 65.08.070 states:

A conveyance of real property, when acknowledged by the person executing the same . . . may be recorded in the office of the recording officer of the county where the property is situated. Every such conveyance not so recorded is void as against any subsequent purchaser or mortgagee in good faith and for a valuable consideration from the same vendor, his heirs or devisees, of the same real property or any portion thereof whose conveyance is first duly recorded. An instrument is deemed recorded the minute it is filed for record.

*First Commonwealth Bank v. Heller*, 2004 PA Super 431, 863 A.2d 1153, 1157; RESTATEMENT (THIRD) OF PROPERTY: MORT-GAGES § 7.6 cmt. a (1997).

¶11 Equitable subrogation in mortgage refinancing is a relatively new concept in Washington. The Washington Supreme Court considered the issue in a case of first impression in *Kim*, 145 Wn.2d 79. In 1995, Sterling Trust loaned money to Lee's parents, secured by a lien against a Yakima residence where Lee lived. In 1997, Kim obtained a judgment against Lee, which he recorded. Later that year, Lee acquired the residence, subject to Sterling's lien. In 1998, Pioneer loaned money to Lee, secured by a lien against the same residence. Lee used Pioneer's loan pro-ceeds to pay off Sterling's lien. Pioneer did not know of Kim's judgment because its title insurer, Yakima Title, had failed to discover that judgment. After Sterling was paid off, Kim informed Yakima Title that his lien was superior to Pioneer's. Still not told of Kim's lien by Yakima Title, Pioneer assigned its deed of trust to PHH Mortgage Ser-vices. PHH then obtained a new title policy from Yakima Title, which despite its knowledge of Kim's judgment, again failed to disclose it to PHH. When PHH eventually learned of Kim's judgment, it tendered its defense to Yakima Ti-tle, which then claimed that PHH had priority over Kim through equitable subrogation to Sterling's former lien.

¶12 The Supreme Court denied Yakima Title's claim of equitable subrogation. The court stated that subrogation is an equitable concept designed to " 'impose ultimate respon-sibility for a wrong or loss on the party who, in equity and good conscience, ought to bear it.' " *Kim*, 145 Wn.2d at 88 (quoting *Mahler v. Szucs*, 135 Wn.2d 398, 411, 957 P.2d 632 (1998)). The court adopted the principle of subrogation established in *Restatement (Third) of Property*, section 7.3,[2] and concluded that equitable subrogation is appropriate

---

[2] *Restatement (Third) of Property: Mortgages* § 7.3 states, in part:

(a) If a senior mortgage is released of record and, as part of the same transaction, is replaced with a new mortgage, the latter mortgage retains the same priority as its predecessor, except

unless (1) material prejudice to an intervening lienholder results, (2) the subrogee has actual knowledge of the intervening lien, or (3) the culpability of the subrogee would create a result that would ignore the interests of equity and justice.

¶13 Applying the three elements, the court concluded that the changed terms of the two loans prejudiced Kim and that Yakima's actual knowledge[3] of Kim's judgment barred equitable subrogation. Further, in considering Yakima's culpability, the court determined that Yakima should not be relieved of the consequences of its negligence in failing to discover or disclose Kim's judgment.

¶14 In the only other Washington case to consider equitable subrogation in mortgage refinancing, *BNC Mortgage, Inc. v. Tax Pros, Inc.*, 111 Wn. App. 238, 253, 46 P.3d 812 (2002), Division Two declined equitable subrogation to BNC, a financial institution, which had paid off the mortgage of a prior lienholder. The court mentioned *Kim*, but did not consider its elements because the court in *Kim* "did not . . . clearly explain why"[4] it had reached its result. *BNC*, 111 Wn. App. at 257.[5] Nor did the court consider whether

---

(1) to the extent that any change in the terms of the mortgage or the obligation it secures is materially prejudicial to the holder of a junior interest in the real estate, or

(2) to the extent that one who is protected by the recording act acquires an interest in the real estate at a time that the senior mortgage is not of record.

(b) If a senior mortgage or the obligation it secures is modified by the parties, the mortgage as modified retains priority as against junior interests in the real estate, except to the extent that the modification is materially prejudicial to the holders of such interests. . . .

[3] The court also considered constructive knowledge to be a bar to equitable subrogation. *Kim*, 145 Wn.2d at 92.

[4] The court was particularly puzzled by the Supreme Court's adoption in *Kim* of section 7.3 of the *Restatement*, which applies when a mortgagee replaces its own mortgage, rather than section 7.6, which applies when a mortgagee replaces another mortgagee's mortgage. *BNC*, 111 Wn. App at 257 n.59.

[5] Instead, the court applied a two-part test founded in Washington general subrogation law, finding that: (1) "the person seeking [subrogation] must have answered for the debt of another, usually by paying the other's creditor" and (2) "the person must have acted 'under some duty or compulsion, legal or moral,' and not as a volunteer or intermeddler." *BNC*, 111 Wn. App. at 253 (footnotes omitted)

BNC's actual or constructive knowledge of the intervening lienholder barred subrogation. *BNC*, 111 Wn. App. at 256.

¶15 WFB West argues that the *Restatement (Third) of Property* provides the correct analysis for equitable subrogation in Washington. The *Restatement*'s approach focuses on the avoidance of unjust enrichment and provides that equitable subrogation is appropriate in the following circumstances:

> (a) One who fully performs an obligation of another, secured by a mortgage, becomes by subrogation the owner of the obligation and the mortgage to the extent necessary to prevent unjust enrichment. Even though the performance would otherwise discharge the obligation and the mortgage, they are preserved and the mortgage retains its priority in the hands of the subrogee.

> (b) By way of illustration, subrogation is appropriate to prevent unjust enrichment if the person seeking subrogation performs the obligation:

> (1) in order to protect his or her interest;

> (2) under a legal duty to do so;

> (3) on account of misrepresentation, mistake, duress, undue influence, deceit, or other similar imposition; or

> (4) upon a request from the obligor or the obligor's successor to do so, if the person performing was promised repayment and reasonably expected to receive a security interest in the real estate with the priority of the mortgage being discharged, and if subrogation will not materially prejudice the holders of intervening interests in the real estate.

RESTATEMENT (THIRD) OF PROPERTY: MORTGAGES § 7.6 (1997).

¶16 The *Restatement* views as irrelevant whether the mortgagee had actual or constructive notice of the interven-

---

(quoting *Livingston v. Shelton*, 85 Wn.2d 615, 619, 537 P.2d 774 (1975)). Applying this test, the court declined equitable subrogation to BNC because BNC was a volunteer who "chose freely and voluntarily to avail itself of a business opportunity." *BNC*, 111 Wn. App. at 254.

ing lien.[6] The *Restatement*'s approach is a straightforward one. Essentially, regardless of notice, a mortgagee is entitled to subrogation, provided that it reasonably expected to receive the security and priority of the lien it paid and provided subrogation will not materially prejudice the rights of the intervening lienholders. *Heller*, 863 A.2d at 1157-58.

¶17 Here, the trial court did not consider the test applied in *Kim*, but rather devised a test from elements in *BNC* and the *Restatement*, determining that equitable subrogation was appropriate "to prevent unjust enrichment, where the payor is not a volunteer, but acts either to protect his or her own interest or on account of misrepresentation or mistake."[7] Conclusion of Law 7; Clerk's Papers at 600. Although the trial court did not consider the relevance of WFB West's actual knowledge of the intervening lien, testimony at trial and the court's unchallenged findings show that WFB West had actual knowledge of the BoA lien prior to closing. Stewart Title's preliminary title commitment and second, final report for WFB West showed the BoA deed of trust and amended deed of trust reflecting both BoA liens.[8] And a WFB West loan officer testified that he

---

[6] The *Restatement* states in part:

"Many judicial opinions dealing with a mortgagee who pays a preexisting mortgage focus on whether the payor had notice of the intervening interest at the time of the payment. Most of the cases disqualify the payor who has actual knowledge of the intervening interest, although they do not consider constructive notice from the public records to impair the payor's right of subrogation. Under this Restatement, however, subrogation can be granted even if the payor had actual knowledge of the intervening interest; the *payor's notice, actual or constructive, is not necessarily relevant.* The question in such cases is whether the payor reasonably expected to get security with a priority equal to the mortgage being paid." RESTATEMENT (THIRD) OF PROPERTY: MORTGAGES § 7.6 cmt. e (1997) (emphasis added).

[7] The trial court found that WFB West's actions met the required elements of equitable subrogation: WFB West was not a volunteer because (1) WFB West was acting to protect its own interests in the property (the WFB $500,000 loan) and (2) WFB West's actions were based on Sugihara's misrepresentations and its own mistake in believing the WFB loan had paid off BoA's interests. Conclusion of Law 7; Clerk's Papers at 600.

[8] Finding of Fact 18; Clerk's Papers at 597; Ex. 61.

was aware of the BoA liens, but thought they had been paid off and released.

¶18 BoA argues that the court erred because *Kim* is controlling and bars WFB West's equitable subrogation to WaMu's lien because WFB West had actual knowledge of BoA's intervening lien. WFB West counters that *Kim* is limited to title insurers and that actual knowledge is irrelevant because the *Restatement* controls.

¶19 It is apparent that *Kim v. Lee* specifically addressed the role of a mortgagee's actual knowledge of an intervening lienholder, stating:

> *The Restatement (Third) of Property: Mortgages* has adopted the view that, "subrogation *can* be granted even if the payor had actual knowledge of the intervening interest; the payor's notice, actual or constructive, is not necessarily relevant." RESTATEMENT (THIRD) OF PROP.: *Mortgages* § 7.6 cmt. e at 520 (1997) (emphasis added). However, allowing subrogation in the face of actual knowledge would discount the purpose of the recording statute, RCW 65.08.070. The purpose of the recording statute is to make the deed first recorded superior to any outstanding unrecorded conveyance of the same property . . . .

*Kim*, 145 Wn.2d at 90.

■■ ¶20 Thus, the court considered the *Restatement*'s view of actual knowledge as irrelevant and rejected it. The express nature of the court's statement does not allow us to characterize it as dicta. We therefore cannot agree with WFB West that the *Restatement* approach controls in Washington. Nor do we find *Kim* limited to title insurers, because the recording statute applies equally to sophisticated financial institutions (such as WFB West) and title insurers alike.

¶21 We recognize that other jurisdictions have increasingly recognized the flaws in the actual knowledge prohibition,[9] and although actual knowledge bars subrogation in the majority of jurisdictions, this dominant position is being

---

[9] *Lamb Excavation, Inc. v. Chase Manhattan Mortgage Corp.*, 208 Ariz. 478, 95 P.3d 542, 544 (2004) (granting subrogation, holding constructive notice is not an element of equitable subrogation under Arizona law); *Houston v. Bank of Am. Fed.*

rapidly eroded.[10] But we conclude that the controlling precedent of *Kim* compels the conclusion that in Washington, actual knowledge of an intervening lien bars equitable subrogation.[11] The court erred in granting equitable subrogation to WFB West.

¶22 Because we so hold, we do not reach BoA's further challenged findings of fact, nor do we consider whether WFB West acted as a volunteer or whether BoA was materially prejudiced by the subrogation.

## CROSS-APPEAL

¶23 Wells Fargo Bank (WFB) argues that the court erred in denying the claim of a contract implied in law between BoA and WFB for the reconveyance of the deed of trust secured by the Sugihara residence.

---

*Sav. Bank*, 119 Nev. 485, 78 P.3d 71, 73 (2003) (granting subrogation adopting the *Restatement* approach in finding the subrogee's constructive and/or actual knowledge of the intervening lien irrelevant); *E. Boston Sav. Bank v. Ogan*, 428 Mass. 327, 701 N.E.2d 331 (1998) (declining to adopt a bright-line rule regarding subrogee knowledge but looking to equity to determine if subrogation is inappropriate). *But see Osterman v. Baber*, 714 N.E.2d 735 (Ind. Ct. App. 1999) (citing the *Restatement* but declining to follow its approach regarding actual knowledge principle); *Bankers Trust Co. v. United States*, 29 Kan. App. 2d 215, 25 P.3d 877 (2001) (acknowledging the *Restatement*'s approach but declining to follow it).

[10] *See Bank of N.Y. v. Nally*, 820 N.E.2d 644, 653 (Ind. 2005) (Supreme Court of Indiana expressly adopted the *Restatement (Third)* regarding equitable subrogation); *Heller*, 863 A.2d at 1157-58 (finding the logic of the *Restatement* to be compelling and very persuasive, but compelled by stare decisis to deny subrogation); *Lamb Excavation*, 208 Ariz. 478 (examining the majority and minority views on subrogation and approving of the *Restatement* approach focusing on the lack of prejudice to the intervening lienholder); *Houston*, 119 Nev. 485 (granting subrogation, finding no evidence the intervening lienholder would be prejudiced since it remained in the same position, and adopting the *Restatement* approach); *E. Sav. Bank, FSB v. Pappas*, 829 A.2d 953, 961 (D.C. 2003) (granting subrogation based on the *Restatement*'s analysis); *Suntrust Bank v. Riverside Nat'l Bank of Fla.*, 792 So. 2d 1222 (Fla. Dist. Ct. App. 2001) (granting subrogation based on the *Restatement*'s analysis).

[11] We also find no case approving subrogation that contemplates facts similar to those presented here. WFB West ignored the concerns of their escrow agent and failed to make contact with BoA, despite knowledge of their preexisting loans. Simple solutions existed to address the intervening liens, including the proper use of the escrow agent and seeking subordination agreements. WFB West did neither.

¶24 The facts relevant to the cross appeal are as follows. When the WFB loan officer processed Sugihara's loan application for the $500,000, WFB contacted BoA for an accounting of the $400,000 loan that Sugihara had disclosed. BoA provided the accounting in writing and included a contact name and number for questions regarding the loan amount. WFB did not make contact at any point with BoA regarding BoA's deed of trust. And relying on Sugihara's claim that the BoA $1,000,000 lien had been released, WFB did not seek an accounting of the second BoA loan or use an escrow agent.

¶25 WFB's errors regarding clearing the title resulted in the loan being funded on November 9, 2001. WFB sent a check to BoA for $402,694.43 as a full payment of BoA loan 1. WFB's payment to BoA was accompanied by a WFB form letter, stating that WFB had recently made a loan to Sugihara and asking BoA to "comply with the following instructions:"

> Payoff of $401,522.22[12] is enclosed for the above account. Please bill customer for any residual balance. If this is a real property secured loan, the amount includes fees for recording a discharge in the appropriate county recorder's office. State law may require you to discharge your lien within a specific number of days. Consult your counsel as to specific requirement.
>
> If there are any discrepancies, with the above payoff/payment, please contact Wells Fargo Home Equity Originations Center, Barnhart [redacted text] at (800) 266-6886. Thank you for your immediate attention.

Ex. 26.

¶26 Contrary to the information in the letter, the check was for the exact amount of the outstanding loan and did not include any fees for recording the discharge. On that same day, November 9, 2001, WFB released $98,000 of the $500,000 loan directly to Sugihara, without waiting for a response to the letter from BoA.

---

[12] This figure was for an amount without the correct current interest at the time of the payoff, but the check actually enclosed by WFB to BoA was for the correct amount, $402,694.43.

¶27 BoA did not receive WFB's check and letter until December 5, 2001. At that time, both BoA loans were in default. BoA decided not to release the deed of trust because the second loan still had $970,000 outstanding. BoA did not inform WFB of the decision not to release the deed of trust.

¶28 The trial court found that BoA did understand that WFB was requesting a reconveyance when it cashed the payoff check, but that WFB did not prove by a preponderance of the evidence that application of the proceeds established a contract implied in law that required BoA to reconvey the BoA deed of trust.

¶29 BoA assigns error to the finding of fact regarding BoA's understanding of WFB's request. Although WFB's form letter is not a model of clarity, there is substantial evidence in the record to support the finding that BoA understood the letter to be a request for reconveyance. Michael Skovron, BoA's loan officer assigned to the Sugihara accounts stated[13] that when he first saw the WFB form letter prior to realizing that the two BoA loans were secured by only one deed of trust, he assumed the letter needed to be addressed in terms of a reconveyance. He later discussed the reconveyance issue with the special credits department of the bank. Only when the loan officers realized that the deed of trust secured both BoA loans was the decision made not to release the deed because of the $970,000 still outstanding.

¶30 WFB argues that because BoA knew the letter requested a reconveyance, cashing the check established a contract implied in law, requiring the reconveyance of the BoA deed of trust or, in the alternative, repayment of the $402,000 paid by WFB.

¶31 Contracts implied in law are founded on equitable principles of unjust enrichment, which require an analysis of whether, under the particular circumstances, the acceptance or retention of the benefit makes it inequitable to retain the benefit without payment of its value.

---

[13] The statement was made in a deposition that was read into the record.

*Bailie Communications, Ltd. v. Trend Bus. Sys., Inc.*, 61 Wn. App. 151, 160, 810 P.2d 12, 814 P.2d 699 (1991). "[T]he mere fact that a person benefits another is not sufficient to require the other to make restitution." *Lynch v. Deaconess Med. Ctr.*, 113 Wn.2d 162, 165, 776 P.2d 681 (1989). A further requirement of contracts implied in law is that the plaintiff not be a mere volunteer. *Lynch*, 113 Wn.2d at 165. Courts look to three factors in determining whether a party has acted as a volunteer: (1) whether the benefits were conferred at the request of the party benefited, (2) whether the party benefited knew of the payment but stood back and let the party make the payment, and (3) whether the benefits were necessary to protect the interests of the party who conferred the benefit. *Ellenburg v. Larson Fruit Co.*, 66 Wn. App. 246, 251-52, 835 P.2d 225 (1992).

¶32 Although BoA let the benefit be conferred by cashing the check, it was not at BoA's request—BoA had no knowledge of Sugihara's loan application to WFB until the accounting demand came from WFB for the payoff amount. Nor did WFB make the loan to protect any interest—the WFB loan officer testified that the loan was made on a voluntary basis for profit. We conclude that under these circumstances, WFB was a volunteer. The trial court did not err in denying WFB's claim.

¶33 Affirmed in part and reversed in part.

BAKER and BECKER, JJ., concur.

Review granted at 156 Wn.2d 1010 (2006).