AMERICAN STERLING BANK, a Missouri Corporation, Appellant, v. JOHNNY MANAGEMENT LV, INC., a Nevada Corporation, Respondent.

No. 52822

October 28, 2010

245 P.3d 535

*Gerrard Cox & Larsen* and *Douglas D. Gerrard* and *Gary C. Milne*, Henderson, for Appellant.

*Fennemore Craig, P.C.*, and *Christopher H. Byrd* and *Anthony B. Golden*, Las Vegas, for Respondent.

424

**OPINION**

By the Court, HARDESTY, J.:

This appeal concerns the application of the doctrine of equitable subrogation where a refinancing mortgage's due date was accelerated. We have previously adopted the rule in Restatement (Third) of Property: Mortgages, section 7.6, that a lender whose loan proceeds were used to pay the balance of a prior note is equitably subrogated to the former lender's priority lien position so long as an intervening lienholder is not materially prejudiced. *Houston v. Bank of America*, 119 Nev. 485, 490, 78 P.3d 71, 74 (2003). The Restatement reasons that holders of intervening interests cannot complain about the application of the equitable subrogation doctrine because the intervening lienholder is "no worse off than before the senior obligation was discharged." Restatement (Third) of Prop.: Mortgages § 7.6 cmt. a (1997).

In this appeal, we consider whether an intervening lienholder suffers an injustice or prejudice precluding equitable subrogation

where the terms, including the maturity date, of the refinancing loan are materially different than the terms and maturity date of the senior obligation. We conclude that material differences in interest rates and payment terms do not cause prejudice to the intervening lienholder because equitable subrogation generally limits the paying lender's priority to the amount and terms of the retired senior obligation. However, a materially accelerated maturity date for the paying lender's loan can, and did in this case, prejudice the intervening lienholder, precluding equitable subrogation. We therefore affirm.

## FACTS

In May 2005, Jamal El Jwaidi and Kamila Zakoscielna (collectively, the Borrowers) obtained two purchase money loans from Steward Financial, Inc., to purchase real property in Las Vegas, Nevada. The first Steward promissory note (1st Steward note) was in the amount of $2 million and was secured by a first deed of trust against the property. The second Steward promissory note (2nd Steward note) was for $500,000, matured in 15 years, or 2020, earned an 8.375 percent fixed interest rate, with principal and interest payable at approximately $3,800 monthly, and was secured by a second deed of trust on the property. The beneficial interest in the 2nd Steward note and deed of trust were later assigned to GMAC Mortgage Corporation.

On September 14, 2005, the Borrowers obtained an additional loan in the amount of $650,000 from respondent Johnny Management LV, Inc. (JMLV), also secured by a deed of trust against the property and recorded in the third priority lien position. However, just prior to recording the JMLV loan, the Borrowers opened escrow with appellant American Sterling Bank (ASB) at Fidelity National Title of Nevada to refinance the 2nd Steward note. Escrow closed on the ASB note on September 27, 2005, and the Borrowers obtained a loan in the amount of $805,000 that bore a variable interest rate with monthly interest-only payments of approximately $5,469, with the entire principal balance payable in six months, or March 2006.[1] At closing, Fidelity National Title paid $519,092 on behalf of ASB to GMAC to satisfy the 2nd Steward note. Failing to discover the existence of the previously recorded JMLV deed of trust, ASB recorded its deed of trust on the property on September 27, 2005.

Prior to the initiation of this litigation, the Borrowers paid their payments on the ASB note, but eventually defaulted on their monthly payment obligations on the JMLV note. JMLV initiated foreclosure by recording a notice of default in March 2007 and

---

[1]The ASB note was subsequently renewed beyond March 2006 and through the date of trial.

later sought a trustee's sale. The trustee's sale was scheduled to occur in July 2007. Prior to the trustee's sale, ASB filed a complaint in the district court to enjoin the sale and declare ASB's deed of trust to have priority senior to JMLV's deed of trust through the doctrine of equitable subrogation.

At trial, ASB argued that it was entitled to equitable subrogation on the terms of the 2nd Steward note. ASB attributed all payments received to the ASB note; however, ASB considered the 2nd Steward note and the deed of trust securing it to be in default, thus accruing interest, late fees, and costs. As a result, ASB claimed that not only was it entitled to equitable subrogation up to the value that it paid to satisfy the 2nd Steward note, $519,092, it was also entitled to interest, late fees, and costs according to the terms of the defaulted 2nd Steward note, raising the total lien value to $685,217.

JMLV argued that equitable subrogation should not apply in this situation because JMLV would be prejudiced by granting ASB a lien priority in front of JMLV's previously recorded deed of trust and that it was inappropriate for ASB to apply all payments received from Borrowers to the ASB note and treat the 2nd Steward note to be in default and accruing interest, late fees, and costs. The district court agreed with JMLV and determined that ASB acted inequitably by artificially increasing the default value of the 2nd Steward note when the payments were current on the ASB note. The district court also found that JMLV was prejudiced by the material differences in loan terms between the ASB note and the 2nd Steward note.

On a motion to reconsider the district court's decision or, in the alternative, stay the foreclosure, ASB clarified, for the first time, that it was within the district court's discretion to grant or disregard the additional interest, late fees, and costs attributed to the 2nd Steward note and simply grant equitable subrogation for the principal value that ASB paid to satisfy the 2nd Steward note, $519,092. Additionally, ASB asserted that because equitable subrogation is subject to the terms of the 2nd Steward note, any difference in the terms of the respective notes is not prejudicial. The district court denied ASB's motion to reconsider but did grant a motion to stay the foreclosure pending this appeal.

## DISCUSSION

In resolving this appeal, we consider the various prejudicial and equitable factors that affect the application of equitable subrogation according to section 7.6 of the Restatement (Third) of Property: Mortgages. The principle and effect of equitable subrogation requires that we determine first whether a difference in the terms between a discharged promissory note and a potentially sub-

rogated note is relevant and, if so, whether any such difference is prejudicial. Then, we must evaluate the district court's application of equitable subrogation as an equitable remedy to determine whether it is proper to adjust the priority position of the refinancing mortgage.

*Standard of review*

When the material facts of a case are undisputed, the effects of the application of a legal doctrine to those facts are a question of law that this court reviews de novo. *Banegas v. SIIS*, 117 Nev. 222, 224, 19 P.3d 245, 247 (2001). This same standard applies in the context of an appellate court's review of equitable subrogation. *Hicks v. Londre*, 125 P.3d 452, 455 (Colo. 2005). This standard allows an appellate court "to independently review the question of whether the doctrine of equitable subrogation applies to the circumstances present in [a particular] case." *Id.* However, equitable subrogation is also an equitable remedy that requires the court to balance the equities based on the facts and circumstances of each particular case. *Murray v. Cadle Co.*, 257 S.W.3d 291, 300 (Tex. App. 2008). Subrogation's purpose is to "grant an equitable result between the parties." 2 Grant S. Nelson & Dale A. Whitman, *Real Estate Finance Law* § 10.6, at 26 (5th ed. 2007). This court has expressly stated that district courts have full discretion to fashion and grant equitable remedies, *Bedore v. Familian*, 122 Nev. 5, 11-12 & n.21, 125 P.3d 1168, 1172 & n.21 (2006), and we will review a district court's decision granting or denying an equitable remedy for abuse of discretion. *See Douglas Disposal, Inc. v. Wee Haul, LLC*, 123 Nev. 552, 557, 170 P.3d 508, 512 (2007) (reviewing a request for injunctive relief under an abuse of discretion standard); *Jacoby v. Jacoby*, 100 P.3d 852, 855 (Wyo. 2004) (noting that trial courts have broad discretion to grant equitable relief). " ' " "An abuse of discretion occurs if the district court's decision is arbitrary or capricious or if it exceeds the bounds of law or reason." ' " *Nolan v. State*, 122 Nev. 363, 376, 132 P.3d 564, 572 (2006) (quoting *Crawford v. State*, 121 Nev. 744, 748, 121 P.3d 582, 585 (2005) (quoting *Jackson v. State*, 117 Nev. 116, 120, 17 P.3d 998, 1000 (2001))).

*Equitable subrogation*

Ordinarily, when a senior deed of trust is satisfied, the junior lienholders remain in their respective order of priority and are consequently elevated up the priority line. *Hicks*, 125 P.3d at 456. Equitable subrogation interrupts this procedure and "permits 'a person who pays off an encumbrance to assume the same priority position as the holder of the previous encumbrance.' "*Houston v.*

*Bank of America*, 119 Nev. 485, 488, 78 P.3d 71, 73 (2003) (quoting *Mort v. U.S.*, 86 F.3d 890, 893 (9th Cir. 1996)). It acts as an exception to modern recording statutes and enables "a later-filed lienholder to leap-frog over an intervening lien[holder]." *Hicks*, 125 P.3d at 456, 458. The practical effect of equitable subrogation is a revival of the discharged lien and underlying obligation and assignment to the payor or subrogee, permitting the subrogee to enforce the seniority of the satisfied lien against junior lienors. Restatement (Third) of Prop.: Mortgages § 7.6 cmt. a (1997); *Land Title Ins. Cor. v. Ameriquest Mor. Co.*, 207 P.3d 141, 144-45 (Colo. 2009). We note that if no junior interest existed, the subrogee could just sue on the obligation and obtain a judgment on the lien; however, where an interest exists that is subordinate to the mortgage, the judgment lien would be inferior to the junior interest and of little value absent the application of equitable subrogation. *See* Restatement (Third) of Prop.: Mortgages § 7.6 cmt. a (1997).

In *Houston*, we addressed the principle of equitable subrogation within the lien priority context and adopted section 7.6 of the Restatement (Third) of Property: Mortgages. 119 Nev. at 490, 78 P.3d at 74. The Restatement disregards any actual or constructive notice of the existence of an intervening junior lien and permits equitable subrogation so long as the payor " 'reasonably expected to receive a security interest in the real estate with the priority of the mortgage being discharged, and if subrogation will not materially prejudice the holders of intervening interests in the real estate.' "*Id.* (quoting Restatement (Third) of Prop.: Mortgages § 7.6(b)(4) (1997)).

Although equitable subrogation has the effect of an assignment of the discharged lien, it is not an absolute right and will not be granted if it will result in injustice or prejudice to an intervening lienor. *Houston*, 119 Nev. at 491, 78 P.3d at 75; *Rinn v. First Union Nat. Bank of Maryland*, 176 B.R. 401, 414 (D. Md. 1995). In *Houston*, we recognized that an intervening lienholder is not materially prejudiced by applying equitable subrogation because it remains in the same priority lien position, and on the contrary, may receive a windfall by being elevated to a higher priority status if subrogation is not applied. 119 Nev. at 491, 78 P.3d at 74-75; *see also Lamb Excavation v. Chase Manhattan Mortg.*, 95 P.3d 542, 547 (Ariz. Ct. App. 2004).

*Prejudice through a material difference in terms*

In this case, the district court determined that JMLV was prejudiced, in part, because of the drastic difference in terms between the ASB note and the discharged 2nd Steward note. ASB asserts

that the difference in terms is irrelevant and cannot be prejudicial because section 7.6, comment e of the Third Restatement limits equitable subrogation to the terms of the discharged 2nd Steward note. While we do not agree that the difference in terms is irrelevant, we recognize that Restatement section 7.6, comment e neutralizes potential prejudice by limiting subrogation to the terms of the discharged note and security interest. Restatement (Third) of Prop.: Mortgages § 7.6 cmt. e (1997). A payor or subrogee may not enforce loan terms that are materially different from the terms of the discharged note. *Land Title Ins. Cor.*, 207 P.3d at 145. "This principle is derived both from the fact that equitable subrogation acts only as a revival and assignment of the discharged obligation and security, rather than a substitution of a new obligation in place of another." *Id.*

Section 7.6, comment e requires that "[t]he payor is subrogated only to the extent that the funds disbursed are actually applied toward payment of the prior lien. There is no right of subrogation with respect to any excess funds."[2] Restatement (Third) of Prop.: Mortgages § 7.6 cmt. e (1997). It also recognizes that when a new lender, such as ASB, demands a higher interest rate, an intervening lienholder is not prejudiced because subrogation is "granted only to the extent of the debt balance that would have existed if the interest rate had been unchanged." *Id.*

We agree, in general, that under section 7.6 of the Third Restatement, JMLV would not be prejudiced by any material difference in the value or interest rates between the ASB note and the 2nd Steward note. Although the ASB note has a principal value of $805,000 and a variable interest rate, under the doctrine of equitable subrogation, ASB could only be equitably subrogated up to the value of the original 2nd Steward note, $519,092, and would only be subject to the debt balance at the existing interest rate of 8.375 percent. *Id.* Because of these restrictions, which serve to neutralize the effect of a change in the principal value and/or interest rate, we conclude that, in this instance, a difference in value and interest rates is not prejudicial and should not preclude equitable subrogation.

 ██

We recognize, however, that section 7.6, comment e is silent with respect to the prejudicial effect of materially accelerating the maturity date of the note.[3] Unlike the principal value or interest

---

[2] Because there is no subrogation for amounts in excess of the amount paid to discharge the prior lien, Restatement (Third) of Prop.: Mortgages § 7.6 cmt. e (1997), it would appear equitable that the lien securing these excess amounts necessarily becomes a junior lien behind all other previously recorded liens.

[3] The Restatement explains that prejudice typically "flows from a delay by the payor in recording his or her new mortgage, in demanding and recording a written assignment, or in otherwise publically asserting subrogation to the

rate, an alteration of the maturity date affects various other terms and conditions of the note, including the due date for final payment, a borrower's default, and subsequently, the lender's ability to foreclose on a security interest. We determine that because the impact of an accelerated maturity date has extended consequences and cannot be neutralized to the same degree as the principal value and interest rates, equitable subrogation should only be applied after determining whether an accelerated maturity date has a materially prejudicial effect on junior lienholders.

Restatement (Third) of Property: Mortgages section 7.6, comment e and section 7.3, comments b and c recognize that an extension of the maturity date in the paying loan is not generally prejudicial because it typically reduces the likelihood of foreclosure of a senior lien. We further note that an extension of the maturity date often results in reduced monthly payment obligations, which ultimately benefit the junior lienholders. Likewise, an accelerated maturity date, under certain circumstances, may also be beneficial to the junior lienholder because the senior obligation is extinguished earlier and often at a reduced interest rate. *See* Grant S. Nelson & Dale A. Whitman, *Adopting Restatement Mortgage Subrogation Principles: Saving Billions of Dollars for Refinancing Homeowners*, 2006 BYU L. Rev. 305, 322 (2006). But in extreme situations, where the maturity date is drastically accelerated while the principal value and monthly payment obligations are significantly increased, an accelerated maturity date may be considered prejudicial as it directly affects the likelihood of default on the senior lien. *See id.* at 323 n.66. Additionally, ASB has failed to demonstrate how this court should equitably bifurcate the ASB note to apply both the maturity date of the 2nd Steward note and the maturity date of the ASB note in order to prevent prejudice to any junior lienholders that are subject to the 2nd Steward deed of trust. Under such extreme circumstances, we conclude that an accelerated maturity date may have a prejudicial impact on junior lienholders.

In this case, the 2nd Steward note had a principal balance of $519,092 that would mature in June 2020 and a monthly principal and interest payment obligation of approximately $3,800. However, the maturity date of the ASB note required a final principal payment of $805,000 in March 2006, six months from the date of the note's execution, and required an interest-only monthly payment obligation of approximately $5,469. The maturity date of the ASB note was approximately 14 years earlier than the original 2nd

mortgage paid.'' Restatement (Third) of Prop.: Mortgages § 7.6 cmt. f (1997). There is no apparent prejudice on these grounds nor has JMLV asserted that any prejudice arose from any delay on behalf of ASB in this case.

Steward note. JMLV asserts that the acceleration of the maturity date and the increased monthly payment obligations has increased the likelihood of default on the senior lien and would substantially burden JMLV's ability to cure any default. Because the 2nd Steward deed of trust is intended to act as security for the ASB note, a default on the ASB note would entitle ASB to foreclose on the 2nd Steward deed of trust; therefore, any increased risk of default caused by the ASB note would be prejudicial to a junior lienholder. As a junior lienholder, JMLV assumes a certain risk of foreclosure on senior liens. JMLV's assumption of risk included that the senior obligation would require a $3,800 payment for approximately 15 years; however, JMLV did not assume the risk that the Borrowers would be required to make a final principal payment 14 years sooner than the due date of the 2nd Steward note. By securing the ASB note with the 2nd Steward deed of trust, the increased risk of default on the ASB note prejudicially effects JMLV's calculated risk of foreclosure on a senior lien. Because JMLV has been prejudiced by the drastically accelerated maturity date through an increased risk of default and increased inability to cure the default, we conclude that, under these circumstances, equitable subrogation is not appropriate.

*Equitable subrogation as an equitable remedy*

The district court refused to grant equitable subrogation because it determined that ASB did not act equitably by requesting to subrogate the ASB note that contained substantially different terms than the 2nd Steward note and to be subrogated to a senior priority lien position that had an inflated value above the original value of the lien. The district court reasoned that subrogation, under the circumstances, would be detrimental to a junior lienholder. We ultimately affirm the district court's conclusion but reject the district court's reasoning to the extent that it relies on the difference in interest rate and principal value of the notes. *See Lamb Excavation v. Chase Manhattan Mortg.*, 95 P.3d 542, 547 (Ariz. Ct. App. 2004) (reasoning that the difference in interest rates does not preclude equitable subrogation); *see also St. James Village, Inc. v. Cunningham*, 125 Nev. 211, 221, 210 P.3d 190, 196 (2009) (affirming the district court's decision, although the court "relied on different grounds in reaching its decision").

We conclude that a material acceleration in the maturity date between the senior note and the paying note can accelerate default on the senior lien, resulting in injustice and prejudice to an intervening lienor. While it is practical to neutralize any prejudice resulting from a difference in interest rate and principal value, the prejudicial effect of a material acceleration in the maturity date cannot

be accounted for by the same means. Additionally, at trial, ASB confirmed that it was receiving monthly payment obligations on the ASB note but only allocated those payments to the ASB deed of trust, a junior lien interest, while it also considered the 2nd Steward note and deed of trust to be in default and accruing additional interest, late fees, and costs. Because the 2nd Steward note was accruing interest and increasing in value, ASB did not limit its subrogation claim to the value paid for the discharged deed of trust, $519,092, but claimed that it was entitled to the additional interest, late fees, and costs totaling $685,217. ASB did not clarify that the district court should, as an alternative, limit subrogation to the value paid to satisfy the original 2nd Steward note, $519,092, until after the entry of judgment. Also, ASB failed to explain what the Borrowers or interested junior lienholders could have done in order to prevent the 2nd Steward note from accruing this additional interest.

We agree that it is inequitable and prejudicial to inflate the value of a subrogated deed of trust to the detriment of all junior lienholders and then assert a claim for subrogation to that inflated position. Although arguments were presented about the allocation of the payments ASB received, we do not address at this time how payments on a subrogated note should be allocated when the note is secured by more than one deed of trust. However, because the material difference in the maturity date between the 2nd Steward note and the ASB note unavoidably prejudiced JMLV, and ASB acted inequitably by inflating the value of the subrogated deed of trust, we conclude that the district court did not abuse its discretion by refusing to apply the equitable subrogation doctrine in this case.[4]

Accordingly, we affirm the district court's judgment.

PARRAGUIRRE, C.J., and DOUGLAS, CHERRY, SAITTA, GIBBONS, and PICKERING, JJ., concur.

---

[4]Additionally, we note that JMLV has been prejudiced by having to defend its recorded lien against ASB's request for equitable subrogation. As equitable subrogation is an equitable remedy, it is important to note that JMLV is an innocent party that has been brought into this action through ASB's failure to properly protect its anticipated security interest. It would be inequitable to require JMLV to bear not only its own costs in defending this action but also ASB's costs either directly or through an increase in value secured by a senior lien.