# IN THE COURT OF APPEALS OF TENNESSEE,
## AT JACKSON

_____

| | |
|---|---|
| **ATS, INC.,** ) | Shelby County Chancery Court |
| ) | No. 108159-3 R.D. |
| Plaintiff/Appellant ) | |
| ) | |
| VS. ) | |
| ) | |

FILED

**October 7, 1998**

**Cecil Crowson, Jr.**
Appellate Court Clerk

**JAMES CURTIS KENT and GEORGE V. KENNEY and BILL R. McLAUGHLIN, Trustees for UNION PLANTERS NATIONAL BANK,**

Defendants and Third Party Plaintiffs/Appellees,

VS.

C.A. No. 02A01-9802-CH-00038

**KEITH M. CANFIELD,**

Third Party Defendant and Cross-Plaintiff/Appellee,

VS.

**MID-SOUTH TITLE INSURANCE CORPORATION and LAWYERS TITLE INSURANCE CORPORATION,**

Cross-Defendants-Appellees.

_____

From the Chancery Court of Shelby County at Memphis
**Honorable D. J. Alissandratos, Chancellor**


**Harold D. Mangrum**, MANGRUM & MANGRUM, Memphis, Tennessee
Attorney for Plaintiff/Appellant.

**Oscar C. Carr, III**, GLANKLER BROWN, PLLC, Memphis, Tennessee
Attorney for Defendants/Third Party-Plaintiffs/Appellees.

**Stephen R. Leffler,** Memphis, Tennessee
Attorney for Third Party Defendant/Cross-Plaintiff/Appellee.

**R. Mark Glover**, BAKER, DONELSON, BEARMAN & CALDWELL, Memphis, Tennessee
Attorney for Cross-Defendants/Appellees.


OPINION FILED:

**REVERSED AND REMANDED**


**FARMER, J.**

**CRAWFORD, P.J., W.S.**: (Concurs)
**LILLARD, J.**: (Concurs)

This appeal involves the enforcement of a judgment lien where, subsequent to the

attachment of the judgment lien, the encumbered real property was sold to a buyer who simultaneously granted a purchase money mortgage to a financial institution.

On October 10, 1995, ATS, Inc. (ATS) obtained a money judgment against Keith M. Canfield (Canfield) in the amount of $175,000.00. This judgment was recorded on November 17, 1995, in the Register's Office of Shelby County, Tennessee. On January 5, 1996, Canfield conveyed the piece of real property that is the subject of this lawsuit to James Curtis Kent (Kent). As part of the same transaction, Kent executed a deed of trust in favor of George V. Kinney (Kinney) and Bill R. McLaughlin (McLaughlin) as trustees for Union Planters National Bank (Union Planters). Kent's warranty deed and Union Planters' deed of trust were both recorded on January 8, 1996. On February 8, 1996, United American Bank of Memphis (United American) executed a release of a deed of trust that had been an encumbrance on the same piece of real property since February 10, 1994. This release apparently occurred because proceeds from the sale of the real property to Kent were used to satisfy the debt owed to United American. The United American release was recorded on February 13, 1996.

On September 10, 1996, ATS filed a complaint seeking to enforce its judgment lien by selling the real property now owned by Kent and subject to the deed of trust held by Union Planters. The trial court refused to order the sale of the real property. Instead, the trial court granted a money judgment in favor of ATS and against Kent and Union Planters in the amount of $15,674.75, the amount of money that Canfield received from the sale to Kent after the debts of prior creditors were paid. ATS appeals. We perceive the issues before us to be:

> I. Does the judgment lien of ATS have priority over the purchase money mortgage held by Union Planters?
>
> II. If the judgment lien of ATS does have priority over the purchase money mortgage held by Union Planters, did the trial court err in granting a $15,674.75 money judgment to ATS rather than allowing ATS to enforce its judgment lien through sale of the encumbered property?

Because the facts in this case are undisputed and the foregoing are solely questions of law, our review of the trial court's ruling is de novo with no presumption of correctness. *See, e.g., Lucius*

***v. City of Memphis,*** 925 S.W.2d 522, 522 (Tenn. 1996)(citing ***Ridings v. Ralph M. Parsons Co.,*** 914 S.W.2d 79, 80 (Tenn. 1996)).

<u>ISSUE I.</u>

The law in Tennessee with respect to the manner in which judgment liens are obtained is governed by statute. *See* Tenn. Code Ann. §§ 25-5-101 to -109 (1980 & Supp. 1997). A judgment obtained in Tennessee becomes a lien on the debtor's real property when the judgment is recorded in the register's office of the county where the land is located. *See* Tenn. Code Ann. § 25-5-101(b) (Supp. 1997). Upon proper recordation, the judgment also becomes effective against any person having or later acquiring an interest in the debtor's real property regardless of whether that person was a party to the action resulting in the judgment. *See* Tenn. Code Ann. § 25-5-101(c) (Supp. 1997); Tenn. Code Ann. § 66-24-119 (1993). The judgment creditor must execute upon the lien within three years of the entry of the judgment. *See* Tenn. Code Ann. § 25-5-105(a) (Supp. 1997).

In the instant case, it is undisputed that the judgment obtained by ATS against Canfield became a lien on Canfield's real property on November 17, 1995, the date on which the judgment was recorded. ATS argues that because the judgment was recorded on November 17, 1995 while the deed of trust was not recorded until January 5, 1996, its judgment lien has priority over the mortgage held by Union Planters.[1] Union Planters, however, contends that because its mortgage is a "purchase money mortgage," it is afforded special rights under Tennessee law and accordingly has priority over ATS's judgment lien, regardless of the order of recordation.

In support of its position, Union Planters cites ***Guffey v. Creutzinger***, No. 03A01-

---

[1]Tennessee's race-notice recording statute provides as follows:

> Any of such instruments first registered or noted for registration shall have preference over one of earlier date, but noted for registration afterwards; unless it is proved in a court of equity, according to the rules of the court, that the party claiming under the subsequent instrument had full notice of the previous instrument.

Tenn. Code Ann. § 66-26-105 (1993).

9711-CH-00515, 1998 WL 352586 (Tenn. App. June 15, 1998). In that case, Guffey obtained a money judgment against Creutzinger and promptly recorded it in the county register's office. *See id.* at *1. Approximately four months later, Creutzinger purchased a piece of real property from Parker. *See id.* On the same day as the conveyance from Parker to Creutzinger, Creutzinger executed a deed of trust in favor of First Tennessee Bank. *See id.* In determining the proper order of priority between Guffey's judgment lien and the mortgage held by First Tennessee Bank, we recognized "the special nature of purchase money mortgages whereby the vendee is not vested with absolute title." *See id.* at *5. We found that, because the conveyance from Parker to Creutzinger and the execution of the deed of trust to First Tennessee were part of one continuous transaction, the title acquired by Creutzinger was encumbered when conveyed. *See id.* Accordingly, we held that the First Tennessee mortgage had priority over Guffey's judgment lien even though the judgment lien was recorded prior to the deed of trust. *See id.* at *6.

While we acknowledge that the facts of *Guffey* are very similar to those of the case at bar, we find that the two cases are distinguishable. In *Guffey*, the judgment debtor was the party that acquired the real property. Before the conveyance to the judgment debtor and the execution of the deed of trust, the real property was not subject to the judgment lien. In finding that the title was encumbered by the mortgage when conveyed, we held that the mortgage interest attached before the judgment lien. This rationale is not equally applicable to the facts of the instant case. Here, the judgment debtor sold rather than acquired the real property. ATS's judgment lien attached before the conveyance to Kent and the execution of the deed of trust in favor of Union Planters. Thus, even though the conveyance and the execution of the deed of trust may have been part of "one continuous transaction," this transaction still was not prior in time to the attachment of ATS's judgment lien.

In *Fidelity & Deposit Co. v. Fulcher Brick Co.*, 30 S.W.2d 253 (Tenn. 1930), the Tennessee Supreme Court found that "an alienation of the property after the judgment lien has attached constitutes no obstruction to a levy and sale" and that "no alienation, in whatever form, will defeat the judgment lien after it has attached." *Id.* at 255. More recently, the law in Tennessee regarding the sale of real property subject to a judgment lien has been stated as follows:

The general rule is that once a judgment lien attaches to land

> it remains with the land and cannot be destroyed by the debtor's subsequent alienation of the property. If the debtor sells the property to a third party then the purchaser would take the land subject to the judgment lien unless the judgment creditor waives or releases the lien.

*In re Harbin,* 25 B.R. 703, 706 (Bankr. W.D. Tenn. 1982)(citing 49 C.J.S. *Judgments* § 296 (1982)).

Consistent with the above authority, we find that ATS's judgment lien was not destroyed by the conveyance of the real property from Canfield to Kent. Accordingly, we conclude that the mortgage held by Union Planters is subordinate to the judgment lien of ATS.

ISSUE II.

Having determined that ATS's judgment lien has priority over Union Planters' mortgage, we next consider whether ATS is entitled to enforce its lien through a court ordered sale of the encumbered property. The trial court denied ATS's request that the property be sold and instead granted a money judgment in favor of ATS in the amount of $15,674.75.

The underlying rationale of the trial court's ruling appears to have been that enforcement of the judgment lien through sale of the real property would serve to unjustly enrich ATS at the expense of Kent and Union Planters. If ATS had foreclosed on the real property before the sale to Kent, it would have had to pay $69,200.00 to prior lienholders. The debts to these prior lienholders were satisfied, however, with the proceeds of the sale from Canfield to Kent. Thus, by delaying enforcement, ATS increased its equity in the real property by $69,200.00. Kent and Union Planters argue that it would be inequitable to allow ATS to profit from its failure to promptly execute on its judgment lien.

We recognize that ATS was put in a better position as a result of the sale from Canfield to Kent. We do not, however, find that this occurred through any fault of ATS. By statute, Tennessee law allows up to three years for the enforcement of judgments. *See* Tenn. Code Ann. § 25-5-105(a) (Supp. 1997). This right of enforcement is lost only through failure to exercise the right

within the period of time provided under the statute. *See Hames v. Archer Paper Co.*, 319 S.W.2d 252, 258 (Tenn. App. 1958)(referring to prior statute allowing twelve months for enforcement of judgments). In the instant case, ATS waited only ten months before it sought to foreclose on the encumbered property. We do not find that a ten month delay is in any way suggestive of fault on the part of ATS. On the contrary, we agree with the trial court that Kent and Union Planters were the victims of actual fraud on the part of Canfield. At the time of the transactions between Canfield and Kent, ATS's properly recorded judgment lien was overlooked.

In the unreported case of *Tom Denton Ford, Inc. v. Stoehr,* No. 01A01-9406-CH-00288, 1995 WL 3684 (Tenn. App. Jan. 4, 1995), we were presented with facts similar to those in the case at bar. In *Stoehr*, Davis owned a piece of real property that was encumbered by a purchase money mortgage held by Metropolitan Federal Savings and Loan Association (Metropolitan Federal). *See id.* at *1. Tom Denton Ford, Inc. (Tom Denton) subsequently obtained a judgment against Davis that, once recorded, became a lien against this piece of real property. *See id.* Davis then conveyed the encumbered property to Stoehr. *See id.* At the closing, Stoehr executed a deed of trust to Third National Bank which, after satisfying the debt owed to Metropolitan Federal, obtained a release of the Metropolitan Federal mortgage. *See id.* Tom Denton then sought to enforce its judgment through sale of the real property. *See id.* The trial court denied the request of Tom Denton, instead fashioning what it deemed to be an equitable remedy. *See id.* Reversing the trial court's decision, we stated:

> The plaintiff asserts baldly that it has a right to have the survivorship interest of Paul Donald Davis sold at an execution sale pursuant to Tenn. Code Ann. [25]-5-101, and that the courts should not interfere with that right. We reluctantly must agree; equity follows the law. It cannot supplant a vested legal remedy.
>
> . . . we cannot, as the plaintiff argues, take away from it, or deny to it, a vested statutory right to enforce its lien in accordance with statute.

*Id.* at *2. Kent and Union Planters seek to distinguish *Stoehr* by noting the existence of actual fraud in the present case. We find this distinction unpersuasive, however, as the fraud in this case was committed not by ATS but by Canfield. The fraudulent actions of Canfield do not operate to divest ATS of its statutory right to enforce its judgment.

In the present case, ATS has a vested statutory right to enforce its judgment lien. ATS sought to exercise this right within the period of time allowed for enforcement of judgments. While we acknowledge that ATS benefited from the release of prior liens that accompanied the sale to Kent, we find that this change of position did not occur as the result of any fault on the part of ATS. We therefore find that ATS is entitled to exercise its vested statutory right to have the encumbered property sold and to apply the proceeds of the sale in satisfaction of its judgment.

Based on the forgoing, we reverse the judgment of the trial court and remand for further proceedings consistent with this opinion. Costs of this appeal are charged to the appellees in equal proportions.

_____
FARMER, J.


_____
CRAWFORD, P.J., W.S. (Concurs)


_____
LILLARD, J. (Concurs)