# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON
June 16, 2010 Session

## TRUSTMARK NATIONAL BANK, ET AL. v. DEUTSCHE BANK NATIONAL TRUST COMPANY, ET AL.

**Direct Appeal from the Chancery Court for Shelby County**
**No. CH-07-0045-2      Arnold B. Goldin, Chancellor**

---

**No. W2009-01658-COA-R3-CV - Filed August 19, 2010**

---

This case concerns the priority of lienholders' respective interests in real property. The plaintiffs/appellees, Trustmark National Bank and FirstBank, filed this joint action as amended for declaratory judgment against the defendants/appellants, Long Beach Mortgage Company, Sonya R. Thomas, and Deutsche Bank National Trust Company, and for enforcement of their liens through judicial sale of the property. The plaintiffs' amended complaint asserted that Trustmark and FirstBank held judgment liens against the property that were valid, enforceable, and superior to the defendants' interests. The defendants responded in pertinent part that they were entitled to priority under the doctrine of equitable subrogation, even if the plaintiffs held prior-recorded judgment liens against the property. The trial court granted summary judgment in favor of the plaintiffs, finding that the undisputed facts demonstrated that the plaintiffs' liens were enforceable and superior to the defendants' later-recorded deeds of trust and that the defendants were not entitled to equitable subrogation. The defendants appealed, challenging only whether the trial court erred when it granted summary judgment on the question of equitable subrogation. Because the plaintiffs failed to negate an essential element of equitable subrogation or show that the defendants cannot establish an essential element of equitable subrogation at trial, we reverse the grant of summary judgment in part and remand.

**Tenn. R. App. P. 3 appeal as of Right; Judgment of the Chancery Court Reversed and Remanded**

DAVID R. FARMER, J., delivered the opinion of the Court, in which ALAN E. HIGHERS, P.J., W.S., and J. STEVEN STAFFORD, J., joined.

Joe Lee Wyatt and William J. Wyatt, Memphis, Tennessee, for the appellant, Deutsche Bank National Trust Company, Long Beach Mortgage Company and Sonya R. Thomas.

Jeffrey D. Germany, Memphis, Tennessee, for the appellee, Trustmark National Bank.

Scott A. Frick, Memphis, Tennessee, for the appellee, FirstBank.

**OPINION**

**I. Background and Procedural History**

This is an action to determine the parties' respective interests in real property located at 10520 Century Grove Cove, Eads, Shelby County, Tennessee ("the Property"). The following facts are undisputed.[1] In January 2003, Anna Turner recorded a judgment lien against the Property, which was then owned by Randall Swaney, in the amount of $1,118,550.85 pursuant to Tennessee Code Annotated section 25-5-101.[2] Approximately one

---

[1]We primarily rely upon the defendants' admissions in response to the plaintiffs' statements of undisputed facts, in addition to the admissions found in the parties' briefs, to establish the undisputed facts of this case. This Court explained in *Summers v. Cherokee Children & Family Services, Inc.*, 112 S.W.3d 486 (Tenn. Ct. App. 2002):

> The mere submission of a statement of undisputed material facts by the moving party does not, in of itself, constitute proof of the facts therein. However, when the opposing party agrees that a fact is not disputed pursuant to Tenn. R. Civ. P. 56.03, the court may rely upon that admission in determining whether a genuine issue of material fact exists. A party's sworn pleading based upon personal knowledge can constitute an admission. Similarly, admissions in the brief of the party opposing the motion may be used in determining that there is no genuine issue as to any material fact.

*Summers*, 112 S.W.3d at 510. Furthermore, "[u]ncertified or otherwise inadmissible material may be considered if not challenged, and the objection must be timely or it will be deemed to have been waived." *Id.*; *see also* Robert Banks, Jr. & June F. Entman, *Tennessee Civil Procedure* § 9-8[r], at 9-89 & n.481 (3d ed. 2009). We have accordingly looked beyond the admissions of the parties where necessary and have relied on the evidentiary materials attached in support of the plaintiffs' statements of undisputed facts, which we find is permissible without a determination of whether such materials would be admissible at trial because the defendants did not object to their inclusion.

[2]Tennessee Code Annotated section 25-5-101 provides:

> Except as provided in subdivision (b)(2), judgments and decrees obtained from and after July 1, 1967, in any court of record and judgments in excess of five hundred dollars ($500) obtained from and after July 1, 1969, in any court of general sessions of this state shall be liens upon the debtor's land from the time a certified copy of the judgment or decree shall be registered in the lien book in the register's office of the county where the land is located. If such records are kept elsewhere, no lien shall take effect from the rendition of such

(continued...)

-2-

year later, plaintiff Trustmark National Bank ("Trustmark") recorded a second judgment lien against the Property totaling $219,349.69 plus post-judgment interest. Thereafter, plaintiff FirstBank recorded a third judgment lien against the Property totaling $356,794.16.

In 2005, Ms. Turner released her lien against the Property after she received payment in partial satisfaction of her outstanding judgment against Mr. Swaney from defendant Sonya R. Thomas, who made the payment as consideration for her purchase of the Property. Ms. Thomas financed this purchase with a purchase-money mortgage from defendant Long Beach Mortgage Company ("Long Beach"), which was secured by two deeds of trust executed and recorded in the mortgage company's favor. The result of the sale and subsequent release of Ms. Turner's lien was that the judgment liens of Trustmark and FirstBank appeared to have ascended to the first and second priority positions, with the Long Beach deeds of trust occupying junior positions. It soon became apparent that Long Beach and its successors-in-interest disagreed with this assessment.

Trustmark and FirstBank filed this action as amended against Ms. Thomas, Long Beach, and Deutsche Bank National Trust Company ("Deutsche Bank") seeking, *inter alia*, a declaration that the plaintiffs' judgment liens were valid, enforceable, and superior to any interests the defendants held in the Property.[3] The defendants admitted the majority of the plaintiffs' factual allegations but nevertheless asserted several "defenses," including the doctrine of equitable subrogation.[4] The defendants averred in part that the court should

---

[2](...continued)
judgments or decrees unless and until a certified copy of the same is registered as otherwise provided by law.

Tenn. Code Ann. § 25-5-101(b)(1) (Supp. 2009).

[3]Following the sale of the Property, Washington Mutual Bank, Long Beach's successor-in-interest by operation of law, assigned its interest in one of the Long Beach deeds of trust to defendant Deutsche Bank as trustee for Long Beach Mortgage Loan Trust 2005-2. Deutsche Bank later purchased the Property as trustee of Long Beach Mortgage Loan Trust 2005-2 at a foreclosure sale conducted on its behalf.

[4]Although mistakenly titled a "defense" in the defendants' answers, equitable subrogation is not a "defense" or "affirmative defense" under the facts; it is a counterclaim. The assertion of a right to equitable subrogation in this context concedes that the plaintiffs first recorded their liens but pursues affirmative relief: placement in the first priority position for Deutsche Bank based on equitable principles. This is consistent with the type of relief typically sought in a counterclaim. *See* Tenn. R. Civ. P. 13.01, 13.02 (recognizing that a counterclaim is "any claim" for relief against an opposing party, which may or may not arise out of the same transaction or occurrence that is the subject matter of the opposing party's claim); Tenn. R. Civ. P. 13.03 (recognizing that a counterclaim "may or may not diminish or defeat the recovery sought by the opposing party" and "may claim relief exceeding in amount or different in kind from that sought in the

(continued...)

equitably subrogate them to the priority position of Ms. Turner as the result of their satisfaction of Ms. Turner's lien against the Property, submitting that denial of equitable subrogation would cause them injustice and violate the fundamental principles of equity.

Trustmark and FirstBank eventually filed a motion for summary judgment, which the trial court granted in their favor. The court held in pertinent part that Trustmark and FirstBank's judgments became liens on the Property on the dates they were recorded and that neither judgment was preempted, subordinated, or destroyed when Mr. Swaney conveyed the Property to Ms. Thomas. Noting Tennessee's race-notice recording statutes, the court further held that the defendants were not entitled to equitable subrogation where: (1) the plaintiffs' liens were recorded and "available for the world to see," (2) a sophisticated lender was represented by counsel when the Long Beach deeds of trust were executed, (3) no affidavit was submitted indicating that a title search or abstract prepared in conjunction with the closing failed to disclose the plaintiffs' judgment liens, and (4) the defendants had a legal remedy against either the attorneys who presided over the closing of the sale of the Property or Mr. Swaney. It was the court's opinion that subordinating the plaintiffs' judgment liens would "set a dangerous precedent" in light of the undisputed facts. The court accordingly held that Trustmark and FirstBank were entitled to summary judgment on their claim for declaratory judgment, as well as the defendants' counterclaim for equitable subrogation. After the trial court expressly directed entry of final judgment pursuant to Rule 54.02 of the Tennessee Rules of Civil Procedure, the defendants timely appealed.[5]

## II. Issue Presented

The single issue before this Court, as we perceive it, is whether Trustmark and FirstBank alleged undisputed facts negating an essential element of Deutsche Bank's counterclaim for equitable subrogation or establishing that Deutsche Bank cannot prove its

---

[4](...continued)
pleading of the opposing party"). Rule 8.03 of the Tennessee Rules of Civil Procedure provides that "[w]hen a party has mistakenly designated a defense as a counterclaim or a counterclaim as a defense, the court, if justice so requires, shall treat the pleading as if there had been a proper designation." Tenn. R. Civ. P. 8.03. Although not addressed by the trial court, we find that treating Deutsche Bank's "defense" of equitable subrogation as a counterclaim is appropriate in this appeal, especially where at least one of the plaintiffs expressly treated equitable subrogation as an affirmative defense in its papers before the trial court, because the burden on the plaintiffs is the same regardless of whether the doctrine is considered an affirmative defense or counterclaim.

[5]Although not discussed herein, the present action includes an additional claim between these parties regarding the plaintiffs' right to judicial sale of the Property and a third-party complaint involving multiple parties.

-4-

counterclaim at trial.[6] Deutsche Bank does not challenge the trial court's conclusion that the intervening judgment liens of Trustmark and FirstBank are valid, prior-recorded liens on the Property which are superior to the interests of Deutsche Bank absent the application of equitable subrogation.

### III.  Standard of Review

This Court reviews a trial court's decision on a motion for summary judgment *de novo* with no presumption of correctness.  *Martin v. Norfolk S. Ry. Co.*, 271 S.W.3d 76, 84 (Tenn. 2008) (citing *Blair v. W. Town Mall*, 130 S.W.3d 761, 763 (Tenn. 2004)).  We review the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in favor of the nonmoving party.  *Id.* (citing *Staples v. CBL & Assocs.*, 15 S.W.3d 83, 89 (Tenn. 2000)).

### IV.  Analysis

Rule 56 of the Tennessee Rules of Civil Procedure provides that a party is entitled to summary judgment if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits . . . show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Tenn. R. Civ. P. 56.04.  The moving party has the ultimate burden of demonstrating that summary judgment is appropriate, *Martin*, 271 S.W.3d at 83 (Tenn. 2008) (citing *Byrd v. Hall*, 847 S.W.2d 208, 215 (Tenn. 1993)), and consequently bears the initial burden of providing a properly supported motion showing there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law, *id.* (citing *Staples*, 15 S.W.3d at 88; *McCarley v. W. Quality Food Serv.*, 960 S.W.2d 585, 588 (Tenn. 1998)).  "The moving party may make the required showing and therefore shift the burden of production to the nonmoving party by either: (1) affirmatively negating an essential element of the nonmoving party's claim; or (2) showing that the nonmoving party cannot prove an essential element of the claim at trial."  *Id.* (citing *Hannan v. Alltel Publ'g Co.*, 270 S.W.3d 1, 5 (Tenn. 2008); *McCarley*, 960 S.W.2d at 588; *Byrd*, 847 S.W.2d at 215 n.5).

A party will not succeed on a motion for summary judgment merely by asserting that the nonmoving party is without evidence to support its claim.  *Id.* at 83-84 (citing *Byrd*, 847 S.W.2d at 215).  "The moving party must either produce evidence or refer to evidence previously submitted by the nonmoving party that negates an essential element of the nonmoving party's claim or shows that the nonmoving party cannot prove an essential

---

[6]We will solely refer to Deutsche Bank as the appellant in this appeal for the sake of convenience and clarity, noting that the parties appear to agree Deutsche Bank is the only entity with a continuing interest in the lawsuit.

element of the claim at trial." *Id.* at 84 (citing *Hannan*, 270 S.W.3d at 5). Production of evidence raising doubts about the merits of the nonmoving party's claim will not suffice. *Id.* (citing *McCarley*, 960 S.W.2d at 588 (Tenn. 1998)). "[T]he moving party must point to evidence that tends to disprove an essential factual claim made by the nonmoving party." *Id.* (citing *Blair*, 130 S.W.3d at 768). If the moving party does not carry its initial burden, the nonmoving party has no obligation to produce evidentiary materials in support of its position. *Id.* (citing *McCarley*, 960 S.W.2d at 588; *Staples*, 15 S.W.3d at 88).

Once a moving party carries its initial burden, the focus of the inquiry shifts to the nonmoving party who must "affirmatively show facts either (a) supporting the elements of its claim or defense if it has the burden of persuasion, or (b) negating the movant's claim or defense if the movant has the burden of persuasion." Lawrence A. Pivnick, *Tennessee Circuit Court Practice* § 27:5, at 382-83 & n.48 (2010) (collecting cases). The Tennessee Supreme Court has articulated four methods by which the nonmoving party can satisfy its burden of production and defeat a motion for summary judgment:

> (1) pointing to evidence establishing material factual disputes that were over-looked or ignored by the moving party; (2) rehabilitating the evidence attacked by the moving party; (3) producing additional evidence establishing the existence of a genuine issue for trial; or (4) submitting an affidavit explaining the necessity for further discovery pursuant to Tenn. R. Civ. P., Rule 56.06.

*McCarley v. W. Quality Food Serv.*, 960 S.W.2d 585, 588 (Tenn. 1998) (citing *Byrd*, 847 S.W.2d at 215 n.6). Courts must accept the evidence proffered by the nonmoving party as true and resolve any doubts concerning the existence of a genuine issue of material fact in favor of the nonmoving party. *Martin v. Norfolk S. Ry. Co.*, 271 S.W.3d 76, 84 (Tenn. 2008) (citation omitted). "'A disputed fact is material if it must be decided in order to resolve the substantive claim or defense at which the motion is directed.'" *Id.* (quoting *Byrd*, 847 S.W.2d at 215). "A disputed fact presents a genuine issue if 'a reasonable jury could legitimately resolve that fact in favor of one side or the other.'" *Id.* (quoting *Byrd*, 847 S.W.2d at 215).

The dispositive issue before this Court is whether Trustmark and FirstBank, as the moving parties, alleged undisputed facts negating an essential element of Deutsche Bank's counterclaim for equitable subrogation or demonstrating that Deutsche Bank cannot establish an essential element of its counterclaim at trial. If the appellees carried their burden, they are entitled to summary judgment because Deutsche Bank offered no additional evidence in support of its position and pointed to no additional facts that would alter our analysis. If the appellees did not carry their burden, the motion must fail. In order to resolve this issue, we

first turn to principles of equitable subrogation.

The Tennessee Supreme Court first addressed the doctrine of equitable subrogation at length in its decision of *Dixon v. Morgan*, 285 S.W. 558 (Tenn. 1926). The complainant in *Dixon*, an experienced businessman, purchased property from a neighbor without conducting a title search. *Dixon*, 285 S.W. at 559-60. Although the complainant knew of the first-position lien that the principal encumbrancer held against the Property, he failed to discover three additional, later-recorded deeds of trust held by a bank and two other individuals. *Id.* at 560. Because these additional deeds of trust were recorded prior to the deed of trust executed in favor of the complainant, the intervening lienholders insisted that their interests in the property were superior to the complainant's interest. *Id.* The complainant, on the other hand, filed a bill of complaint alleging that he was entitled to occupy the priority position of the principal encumbrancer under the doctrine of equitable subrogation. *Id.* According to the complainant, equitable subrogation was appropriate because he paid a sum certain directly to the principal encumbrancer as part of the sale price for the property at issue under the mistaken or fraudulently induced belief that the property was otherwise unencumbered. *Id.* The intervening lienholders disagreed with the complainant's position, maintaining that the lien held by the principal encumbrancer had been extinguished and that their deeds of trust were valid encumbrances on the land superior to the complainant's deed of trust. *Id.* This Court held in favor of the intervening lienholders and dismissed the bill of complaint. *Id.*

The Tennessee Supreme Court reversed our decision and held that the complainant was entitled to equitable subrogation. The court first explained that:

> "Subrogation is the substitution of another person in the place of a creditor, so that the person in whose favor it is exercised succeeds to the rights of the creditor in relation to the debts. The doctrine is one of equity and benevolence, and like contribution and other similar equitable rights was adopted from the civil law, and its basis is the doing of complete, essential, and perfect justice between all the parties without regard to form, and its object is the prevention of injustice. The right does not necessarily rest on contract or privity, but upon principles of natural equity, and does not depend upon the act of the creditor, but may be independent of him and also of the debtor."

*Id.* (quoting 37 Cyc. 363). The court further stated that the application of the doctrine of equitable subrogation must be determined in each case "according to the dictates of equity and good conscience, and consideration of public policy, and will be allowed in all cases where the equities of the case demand it.'" *Id*. (quoting 25 Ruling Case Law, p. 1313). This is because the doctrine "rests upon the maxim that no one shall be enriched by another's loss,

and may be invoked wherever justice demands its application, in opposition to the technical rules of law which liberate securities with the extinguishment of the original debt." *Id.* at 560-61. "The right to it depends upon the facts and circumstances of each particular case, and to which must be applied the principles of justice." *Id*. at 561.

In deciding whether the complainant was entitled to equitable subrogation in *Dixon*, our supreme court declined to base its decision on whether the subrogee had actual or constructive knowledge of the intervening interests.[7] *See id.* at 562-62. The *Dixon* court instead established "culpable negligence" as the only conduct sufficient to bar the application of the equitable doctrine as a matter of law. *Id.* at 562. The court explained that "negligence, to be culpable, necessarily implies the failure to perform some duty," *id.* (citing *Atchison, T. & S. F. R. Co. v. Plaskett*, 26 P. 401, 403 (Kan. 1891)), and "[i]t is not a failure of duty to one's self, but to another, that constitutes culpable negligence." *Id.* The complainant in *Dixon* was entitled to equitable subrogation because he was not guilty of culpable negligence:

> Here the complainant owed no duty to the bank to examine the records; the bank suffered no loss or injury by his failure to do so; neither was its position changed or its security impaired. Hence the complainant was guilty of no breach of duty towards the defendants, or of any immoral or criminal act that would constitute culpable negligence and subject him to censure.

*Id.* at 563. The court acknowledged that "a prudent, cautious man would carefully examine the records, and the complainant was unquestionably guilty of negligence in not doing so," but the court concluded that the complainant's ordinary negligence would not bar equitable subrogation where the defendants would suffer no prejudice as a result thereof. *Id.* Accordingly, the court found in favor of the complainant, decreed a lien in favor of the complainant superior to the interests of the intervening lienholders, and remanded the case to the chancery court "for the purpose of enforcing complainant's lien in the usual manner."

---

[7]The *Dixon* approach is fairly unique when compared with the three approaches most other jurisdictions apply when determining whether to award equitable subrogation. "The first approach, which a majority of states follow, is that actual knowledge of an existing lien precludes the application of equitable subrogation, but constructive knowledge does not." *Houston v. Bank of Am. Fed. Sav. Bank*, 78 P.3d 71, 73 (Nev. 2003) (footnote omitted). "The second approach bars the application of equitable subrogation when a lien holder possesses either actual or constructive notice of an existing lien." *Id.* (footnote omitted). "The third approach, the view adopted by section 7.6 of the Restatement (Third) of Property: Mortgages, disregards actual or constructive notice if the junior lien holder is not prejudiced." *Id.* at 74 (footnote omitted). The *Dixon* court, however, impliedly rejected these approaches when it concluded that only culpable negligence would bar subrogation and declined to distinguish between culpable and non-culpable negligence on the basis of the subrogee's knowledge.

*Id.*

The Tennessee Supreme Court reached a similar conclusion in *Castleman Construction Co. v. Pennington*, 432 S.W.2d 669 (Tenn. 1968), *reh'g denied* (Tenn. Oct. 25, 1968). The dispute in *Castleman* centered around a construction company's purchase of twenty lots in a subdivision from Dr. Edna Pennington ("Pennington") and Ernest W. Colbert ("Colbert"). *Castleman*, 432 S.W.2d at 672. As part of the consideration for the transaction, Pennington and Colbert contracted to provide the construction company with a title policy issued by the Attorneys Title Company. *Id*. The defendants complied with this obligation and the Attorneys Title Company issued two letters showing the property to be clear of encumbrances. *Id.* at 673. After receiving the deed to the lots at issue and at least one of the previously mentioned title letters, the construction company commenced construction of houses on the lots and invested a substantial sum of money in the project. *Id.* at 672. Thereafter, the construction company discovered significant defects in the title of several lots. *Id*. Faced with notice to vacate three of the lots, the construction company satisfied the outstanding indebtedness on the property with funds provided under the terms of the title policy, removing the existing title defects. *Id.*

The construction company later filed a bill of complaint against Pennington and Colbert seeking damages for breach of warranty. *Id.* at 671. The chancery court initially decided the case in favor of the construction company but awarded only nominal damages. *Id.* After the court granted a petition to rehear the case, the construction company amended its original bill of complaint to include Attorneys Title Company and American Title Insurance Company as parties to the action.[8] *Id.* The title companies alleged that they were entitled to recover payments made to clear title to the property under the doctrine of subrogation.[9] *Id.* at 672. After a hearing, the chancery court agreed and entered a judgment of $28,295.71 against both defendants for the use and benefit of the title companies. *Id.* at 671. The defendants appealed. *Id.*

This Court affirmed the judgment against Colbert but reversed the judgment against Pennington. *Id*. We explained:

---

[8]Attorneys Title Company apparently acted as the agent of American Title Insurance Company. *See Castleman*, 432 S.W.2d at 671.

[9]*Castleman* explains that "the title insurance policy issued by the complainant companies to Castleman Construction Company contained a subrogation clause" and "that this clause provided that if and when the title companies had to clear an encumbrance insured against, they would be subrogated to all the rights of [the construction company]." *Castleman*, 432 S.W.2d at 674.

'It is stated in 83 C.J.S. 'Subrogation', Section 2, that the object of subrogation is to promote and accomplish justice and to prevent injustice. That it is the mode which equity adopts to compel the ultimate payment of a debt by one who, in justice, equity and good conscience, should pay.

'In the early case of Greenlaw, Executor v. Pettit (Pittit) 87 Tenn. (467) (11 S.W. 357), in an opinion by Mr. Justice Lurton, one of the greatest judges in Tennessee history, it was said that the right of subrogation, being a pure equity, will be enforced only in favor of a meritorious claim, and where it can be done without injustice to the dobtor [sic] and his other creditors.

'In (Fecheimer-Keifer) v. Burton, 128 Tenn. 682 (164 S.W. 1179, 51 L.R.A., N.S., 343) (688) the Court said:

"Since subrogation is a remedy invented by courts of equity, they will move to administer it where the result will be an equitable one, but not to work an injustice to another in the defeat of an equal equity."

*Id.* at 673 (quoting the decision of the court of appeals).

In view of these principles, we concluded that the title companies were not entitled to subrogation with respect to the claim against Pennington because the equities of the case weighed strongly in his favor. *Id.* The supreme court explained our reasoning thus:

In reaching this conclusion the court [of appeals] took several factors into consideration, some of those factors being that the title companies were negligent in failing to discover the encumbrances which had been placed upon the land sold and that the defendants did not own all the lots sold by them; that all the encumbrances were upon the defendant, Colbert's, interest in the property and that the defendant, Pennington, was unaware that the encumbrances existed; that the defendant, Pennington, relied upon Colbert to attend to the details concerning the development and sale of the property; that the defendants paid for the policy of title insurance issued by the complaint [sic] companies and that the sale of the property was not consummated until the complainant companies had run a title search and indicated by letter that the defendants had a clear title to the property.

*Id.* at 673-74. The title companies and Colbert thereafter petitioned the Tennessee Supreme Court to grant certiorari, with the court granting only the petition of the title companies. *Id.* at 671.

The Tennessee Supreme Court reversed our decision and held that the title companies were entitled to rely on the doctrine of subrogation. The Court first articulated the principles of subrogation, quoting from several treatises:

In 83 C.J.S. Subrogation ss 1 and 2, the following statements are found:

'Subrogation may be defined as the substitution of another person in the place of a creditor, so that the person in whose favor it is exercised succeeds to the rights of the creditor in relation to the debt. * * *

'Subrogation does not owe its origin to statute or custom; nor is it a doctrine of the common law. It originated in equity and is a creature of equity, a doctrine of equity jurisprudence which was adopted by equity from the Roman or the civil law. * * *

'Subrogation is founded on principles of justice and equity, and its operation is governed by principle of equity. It rests on the principle that substantial justice should be attained regardless of form, that is, its basis is the doing of complete, essential, and perfect justice between all the parties without regard to form.'

The following is found in Couch on Insurance 2d, Subrogation, s 61:18

'* * * Stated simply, subrogation is a creature of equity having for its purpose the working out of an equitable adjustment between the parties by securing the ultimate discharge of a debt by the person who in equity and good conscience should pay it.'

And in s 61:20 of the same annotation it is stated:

'The doctrine of subrogation in insurance does not arise from, nor is it dependent upon, statute or custom or any of the terms of the contract; it has its origin in general principles of equity and in the nature of the insurance contract as one of indemnity. The right of subrogation rests not upon a contract, but upon the principles of natural justice.

'The principle of subrogation will be applied or not, according to the dictates of equity and good conscience, and to considerations of public policy, resting, as it does, upon the maxim that no one should be enriched by another's loss. In fact, subrogation is not a matter of strict right, nor does it necessarily rest

-11-

on a contract, but is purely equitable in its nature, and will not be enforced when it would work injustice to the rights of those having equal equities.'

It is further stated in s 16:21:

'To entitle one to subrogation, his equity must be strong and his case clear, since it will not be enforced where the equities are equal, or the rights are not clear, or where it will prejudice the legal or equitable rights of others. Where equities are equal, there is no right to subrogation. However, subrogation will not be enforced against superior equities.'

*Castleman*, 432 S.W.2d at 674-75.

In articulating these principles, the *Castleman* court expressly declined to distinguish between subrogation that arises by contract ("conventional subrogation") and subrogation that arises by the operation of equity ("equitable subrogation") when determining whether to apply the remedy of subrogation:

We would agree with the complainants that the authorities do make a distinction between legal and conventional subrogation. However, in essentially all the authorities which we have read the distinction is made in determining whether there is a right of subrogation in the first instance, rather than in the enforcement of such right. In other words, the distinction is made in determining the source of the right rather than in applying the remedy.

*Id.* at 675. The court explained that it would enforce subrogation "in favor of a meritorious claim and after a balancing of the equities" in either instance. *Id.* at 676. The pertinent question in *Castleman*, therefore, was whether the title companies demonstrated that the equities of the case weighed in favor of subrogation.

Pennington argued that the court needed to look no further than the negligence of the title companies in failing to discover the title defects, which he asserted precluded subrogation. *Id.* at 676. The *Castleman* court, consistent with *Dixon*, rejected this suggestion and agreed that only "culpable negligence may prevent one from being afforded the equitable relief of subrogation." *Id.* (quoting 83 C.J.S. Subrogation s 6). The supreme court acknowledged the ordinary negligence of the title companies in failing to discover the defects but affirmed that ordinary negligence is no bar to subrogation:

We do not say that ordinary negligence of the subrogee may not be taken into consideration in ascertaining whether he be entitled to the equitable relief of

-12-

subrogation. What we do say is that ordinary negligence alone will not be held as a complete bar to subrogation where in spite of such negligence the equities are still in favor of the subrogee.

*Id.* at 677. After analyzing the equities between the parties at some length, the court went on to conclude that the title companies were entitled to subrogation because the equities weighed in their favor. *Id.* at 677-78.

The principles espoused in *Dixon* and *Castleman*, as interpreted and applied in subsequent decisions, continue to guide the application of subrogation in Tennessee. This Court in *Indymac Mortgage Holdings, Inc. v. Kauffman*, No. W2000-01453-COA-R3-CV, 2001 WL 1683779 (Tenn. Ct. App. Dec. 21, 2001), for example, summarized the law of subrogation as follows:

Generally, liens are given priority based on the order in which they are recorded; liens recorded first typically have priority over those recorded at a later date. *See* Tenn. Code Ann. § 66-26-105 (1993). Subrogation is the substitution of a party in the place of a creditor, so that the party in whose favor subrogation is exercised succeeds the creditor in relation to the debt. *Castleman Constr. Co. v. Pennington*, 432 S.W.2d 669, 674 (Tenn. 1968). Subrogation is a creature of equity; its purpose is to provide an equitable adjustment between the parties, based on the facts and circumstances of the case. *Id.* at 675; *Lawyers Title Ins. Corp. v. United Am. Bank*, 21 F. Supp. 2d 785, 792 n.2 (W.D. Tenn. 1998). It is not a right, but a remedy whose application depends on a balancing of the equities involved. *See Lawyer's Title*, 21 F. Supp. 2d at 792; *Castleman Constr.*, 432 S.W.2d at 676. Subrogation is not appropriate where the equities of the parties are equal, where the parties' rights are not clear, or where it would prejudice the legal or equitable rights of another. *Lawyer's Title*, 21 F. Supp. 2d at 792. Relevant to this balancing of equities is the degree of negligence of the party seeking subrogation. *Id.* While ordinary negligence or mistake alone is usually not a bar to subrogation, especially where the equities weigh in the favor of the party seeking subrogation, culpable negligence will generally bar such a remedy. *See Dixon v. Morgan*, 285 S.W. 558, 562 (Tenn. 1926).

*Indymac*, 2001 WL 1683779, at *4; *accord Citicorp Mortgage, Inc. v. Bancorpsouth Bank*, No. W2004-00332-COA-R3-CV, 2004 WL 2715278, at *3 (Tenn. Ct. App. Nov. 19, 2004); *Morgan v. Champion Roofing & Remodeling*, No. W2002-01941-COA-R3-CV, 2003 WL 21756699, at *9 (Tenn. Ct. App. July 29, 2003).

Trustmark and FirstBank argue, however, that this Court should entirely disregard these principles, positing that a more recent decision of this Court has effectively overruled the supreme court's holding in *Dixon* and ignoring the fact that it is not within the province of this Court to overturn supreme court precedent. Their principal position is that equitable subrogation is inappropriate as a matter of law under the reasoning of this Court's decision in *ATS v. Kent*, 27 S.W.3d 923 (Tenn. Ct. App. 1999). The relevant facts of *ATS* are as follows:

> On October 10, 1995, ATS, Inc. (ATS) obtained a money judgment against Keith M. Canfield (Canfield) in the amount of $175,000.00. This judgment was recorded on November 17, 1995, in the Register's Office of Shelby County, Tennessee. On January 5, 1996, Canfield conveyed the piece of real property that is the subject of this lawsuit to James Curtis Kent (Kent). As part of the same transaction, Kent executed a deed of trust in favor of George V. Kinney (Kinney) and Bill R. McLaughlin (McLaughlin) as trustees for Union Planters National Bank (Union Planters). Kent's warranty deed and Union Planters' deed of trust were both recorded on January 8, 1996. On February 8, 1996, United American Bank of Memphis (United American) executed a release of a deed of trust that had been an encumbrance on the same piece of real property since February 10, 1994. This release apparently occurred because proceeds from the sale of the real property to Kent were used to satisfy the debt owed to United American. The United American release was recorded on February 13, 1996.

*ATS*, 27 S.W.3d at 923-24. ATS, similar to the appellees in this case, later filed a complaint to enforce its judgment through sale of the property. *Id.* at 924. The trial court declined to provide ATS the relief it requested and instead granted a money judgment in its favor for $15,674.75, which was the amount of money that Canfield received from the sale after the debts of prior lienholders were satisfied. *Id.* ATS appealed.

This Court, in the pertinent part of its decision, rejected the rationale of the trial court in denying enforcement of ATS's lien, which it described thus:

> The underlying rationale of the trial court's ruling appears to have been that enforcement of the judgment lien through sale of the real property would serve to unjustly enrich ATS at the expense of Kent and Union Planters. If ATS had foreclosed on the real property before the sale to Kent, it would have had to pay $69,200.00 to prior lienholders. The debts to these prior lienholders were satisfied, however, with the proceeds of the sale from Canfield to Kent. Thus, by delaying enforcement, ATS increased its equity in the real property by

-14-

$69,200.00.

*Id.* at 926. We reasoned that, while it was true that ATS was placed in a better position as the result of its delay, ATS had a statutorily vested right to enforce its judgment lien that it would forfeit only if the right was not exercised within the statutorily provided time for enforcement. *ATS*, 27 S.W.3d at 926-27. Because ATS had exercised its right within the relevant time period, we consequently held that the trial court erred when it denied ATS its right to enforce the lien, placing some reliance on the idea that "'equity follows the law. It cannot supplant a vested legal remedy." *Id.* at 926 (quoting *Tom Denton Ford, Inc. v. Stoehr*, No. 01A01-9406-CH-00288, 1995 WL 3684, at *2 (Tenn. Ct. App. Jan. 4, 1995), *perm. app. denied* (Tenn. May 1, 1995)).

It is this latter statement upon which Trustmark and FirstBank now rely as demonstrating that equitable subrogation is barred as a matter of law in this case. Trustmark and FirstBank equate their alleged occupation of the first and second priority positions following the release of Ms. Turner's judgment lien with ATS's statutorily vested right to enforce its lien through judicial sale. Accordingly, the appellees argue that the doctrine of equitable subrogation cannot supplant their statutorily vested rights in the first and second priority positions. The appellees contend that to find otherwise would "eviscerate" Tennessee's race-notice recording system. We disagree with each of the above propositions.

First, the appellees' contention that equitable subrogation cannot supplant their vested statutory right to priority over the later-recorded Long Beach deeds of trust ignores the purpose and effect of the equitable subrogation doctrine. The application of equitable subrogation under the facts would effectively revive Ms. Turner's judgment lien, treating the lien as if it had never been released, and award priority to Deutsche Bank on the basis of that lien. *See Blankenship v. Estate of Bain*, 5 S.W.3d 647, 650 (Tenn. 1999) ("In its most basic form, subrogation means that party A is substituted for party B and is allowed to raise the rights party B had against party C."). Application of the doctrine would create a legal fiction under which the appellees never ascended to the first and second priority positions and, therefore, cannot be said to have obtained the asserted statutorily vested rights in the first and second priority positions.[10] Under the appellees' reasoning, application of equitable subrogation would never be appropriate because the sole purpose of the doctrine is to place the subrogee in a position superior to that of intervening lienholders who have properly

_____

[10]Although we agree that it may be in a sense "unfair" to retrospectively remove a lienholder from the priority position it reasonably believed it occupied, that is the precise purpose of subrogation. Any complaint with the alleged unfairness of the procedure should be taken up in the balancing of the equities, which may account for any prejudice suffered by an intervening lienholder in reliance of its perceived priority position.

-15-

recorded their liens first in time. *See Hicks v. Londre*, 125 P.3d 452, 456 (Colo. 2005) (explaining that equitable subrogation exists to allow a subrogee to "leap-frog" over the interests of an intervening lienholder). The appellees, however, fail to recognize that equitable subrogation is a time-honored exception to the general rule determining priority between lienholders based on the "first in time, first in right" principle. *See E. Boston Sav. Bank v. Ogan*, 701 N.E.2d 331, 334 (Mass. 1998). Adoption of the appellees' position would effectively eliminate that exception, abrogate the doctrine of equitable subrogation in this context, and overrule the Tennessee Supreme Court's decision in *Dixon*. This is a position we are unwilling to take.

Second, the appellees fail to recognize that our decision in *ATS* did not address the doctrine of equitable subrogation. The issue in *ATS* was whether to allow a judgment lienholder, who ascended to the first priority position as the result of the release of a prior-recorded deed of trust, to enforce its judgment lien against real property.[11] There is absolutely no indication that the parties presented or that this Court considered the doctrine of equitable subrogation. Nothing in our decision addressed whether it would have been appropriate, if presented, to subrogate the bank to the position of the prior-recorded deed of trust, which is precisely the question in this case. Here, the application of equitable subrogation would not divest the appellees of their statutorily vested rights to enforce their judgment liens through judicial sale; rather, it would simply restore their liens to the second and third priority positions they occupied prior to the sale of the Property from Mr. Swaney to Ms. Thomas. Importantly, it would not prohibit the appellees from proceeding with the sale of the Property, albeit subject to Deutsche Bank's superior interest. Analogous facts aside, the appellees' interpretation of *ATS* as controlling the outcome of this case is unavailing.

Third, we reject the suggestion that the potential application of equitable subrogation on remand would "eviscerate" Tennessee's race-notice recording system. The race-notice recording system was in full effect when the Tennessee Supreme Court decided *Dixon*. The supreme court, for example, in *Wilkins v. McCorkle*, 80 S.W. 834 (Tenn. 1904), had previously articulated the five leading propositions embraced in Tennessee's recording statutes:

_____

[11]By analogy, if the issue was the same in this case and Deutsche Bank had not argued that it should be equitably subrogated to the position of Ms. Turner, the sole question before this Court would be whether it would be inequitable to permit Trustmark and FirstBank to enforce their judgment liens, which the trial court determined were properly recorded and superior to Long Beach deeds of trust, where the appellees delayed in enforcing their interests and benefitted from release of Ms. Thomas's prior-recorded judgment lien. In that instance, *ATS* would control and the appellees would be entitled to enforce their judgment liens with priority over the Long Beach deeds of trust.

(1) That, as between the parties themselves and their heirs and representatives, such instruments take effect and are good without regard to registration; (2) that they also take effect and are equally good as to all persons who have actual notice of them from the date of such notice, except creditors; (3) that as to creditors (that is, of the vendor) they are inoperative, ineffective, and practically nonexistent until they are noted for registration on the books of the register; (4) that as to all other persons (that is, all not embraced in the preceding classes) they are equally inoperative, ineffective, and nonexistent until so noted for registration; (5) that upon being so "noted for registration" they become at once "notice to all the world," and so effective as to all the world.

*Wilkins*, 80 S.W. at 835 (discussing the recording statutes set forth in Shannon's Code).  The *Dixon* court nevertheless applied the doctrine of equitable subrogation, placing some emphasis on the fact that "the primary object of our registration laws is to protect creditors and innocent purchasers against secret and unrecorded liens." *Dixon v. Morgan*, 285 S.W. 558, 563 (Tenn. 1926).  As our supreme court impliedly recognized, subrogation does not frustrate this principal purpose because it does not seek to establish such liens; instead, it revives the prior-recorded interest of a former encumbrancer whose rights were superior to the intervening lienholders. *See id.*  Thus, the supreme court in *Dixon* impliedly rejected any suggestion that the doctrine of equitable subrogation is repugnant to Tennessee's race-notice recording system with full knowledge of analogous statutory law.  We now expressly reject the same. *See also Ogan*, 701 N.E.2d at 336 (rejecting a similar argument).  Thus, we wholly reject the appellees' principal argument that equitable subrogation is impermissible under Tennessee's race-notice recording system in light of our prior decision in *ATS*.

We equally reject Trustmark and FirstBank's contention that the unreported decision of *Tom Denton Ford, Inc. v. Stoehr*, No. 01A01-9406-CH-00288, 1995 WL 3684 (Tenn. Ct. App. Jan. 4, 1995), *perm. app. denied* (Tenn. May 1, 1995), demonstrates that equitable subrogation is inapplicable in this case.  The judgment lienholder in *Stoehr* obtained and recorded a judgment against one of two owners of real property as tenants by the entirety. *Stoehr*, 1995 WL 3684, at *1 (citation omitted).  At the time the judgment lienholder recorded the judgment, the real property at issue was already encumbered by a prior-recorded, purchase-money deed of trust held by a savings and loan institution. *Id.*  Subsequent to the recording of the judgment, a couple ("the Stoehrs") purchased the property and arranged financing through Third National Bank to satisfy, rather than assume, the savings and loan institution's original purchase-money mortgage. *Id.*  The purchase-money deed of trust was resultantly released, presumably elevating the judgment lienholder to the first priority position. *Id.*  After the judgment lienholder filed an action to sell the prior owner's survivorship interest in the real estate, the Stoehrs and Third National Bank asserted*,*

*inter alia*, a right to equitable subrogation. *Id.* In a terse opinion, this Court held in pertinent part that the defendants were not entitled to equitable subrogation because Third National Bank did not pay a debt for which another was primarily liable. *Id*. (citing *Amos v. Cent. Coal Co.*, 277 S.W.2d 457, 462 (Tenn. Ct. App. 1955)).

The *Stoehr* opinion, however, lends no support to the position of the appellees. First, the *Stoehr* opinion appears to be inconsistent on its face, as Deutsche Bank points out in its brief. The facts of that opinion state that Third National Bank paid off the existing indebtedness on property for which the original owners were wholly liable; thus, the intended subrogee appears to have paid a debt for which another was primarily liable, contrary to our holding. Further, the appellees have not argued that Deutsche Bank and its predecessors did not pay a debt for which another was primarily liable when they satisfied Ms. Turner's judgment lien. This is important because this Court in *Stoehr* resolved the controversy regarding equitable subrogation on that single basis, precluding discussion of the remaining elements of equitable subrogation. Because *Stoehr* offers no additional guidance on the application of equitable subrogation, we find that decision unpersuasive on the question presented here. The appellees' reliance on *Stoehr* is misplaced.

The appellees' remaining arguments are equally unpersuasive. Trustmark and FirstBank contend that equitable subrogation is barred as a matter of law because Deutsche Bank and its predecessors were guilty of culpable negligence. Trustmark and FirstBank submit that the undisputed facts show Deutsche Bank and its predecessors obtained their interests in the Property despite having actual knowledge of the appellees' intervening judgment liens.[12] Even if we equate actual knowledge with culpable negligence, the

---

[12]We express no opinion on whether a subrogee's actual knowledge of intervening liens equates to culpable negligence. Trustmark and FirstBank suggest that this Court's decisions in *Bankers Trust Co. v. Collins*, 124 S.W.3d 576, 579 (Tenn. Ct. App. 2003), and *Citicorp Mortgage, Inc. v. Bancorpsouth Bank*, No. W2004-00332-COA-R3-CV, 2004 WL 2715278 (Tenn. Ct. App. Nov. 19, 2004), demonstrate that an intended subrogee with actual knowledge of an intervening lien cannot rely on the doctrine of equitable subrogation. Our supreme court in *Dixon*, however, does not appear to have drawn the dividing line between "culpable" and "ordinary" negligence on the basis of whether the subrogee has actual or constructive knowledge of intervening liens. As this Court has previously explained,

> The Tennessee Supreme Court in *Dixon* noted that some courts hold that a party is precluded from an equitable subrogation action where he has actual notice and that other courts hold that a party is precluded when he has constructive notice of a junior lien holder. Instead of following either of these rules, the court held that a party guilty of culpable negligence would be precluded from asserting a claim based on equitable subrogation.

*Assocs. Home Equity Servs., Inc. v. Franklin Nat'l Bank*, No. M2000-00516-COA-R3-CV, 2002 WL 459007, (continued...)

undisputed facts fail to establish that Deutsche Bank had actual knowledge of the appellees' intervening liens.[13] Nothing in Trustmark or FirstBank's statements of undisputed facts or attached evidentiary materials establishes that Deutsche Bank and its predecessors had actual knowledge of the appellees' intervening liens. Further, we reject Trustmark's suggestion that boilerplate language in the Long Beach deeds of trust stating that the deeds were subject to "encumbrances of record" demonstrates actual knowledge. Although inclusion of this language supports the idea that Deutsche Bank and its predecessors were negligent if they did not perform a title search prior to obtaining their interests in the Property, it hardly demonstrates actual knowledge of the appellees' intervening liens. Trustmark and FirstBank must therefore rely solely on the undisputed fact that Deutsche Bank and its predecessors had constructive knowledge of the appellees' judgment liens as demonstrating culpable negligence. The degree of negligence attributable to an intended subrogee's failure to discover prior liens despite constructive knowledge, however, is insufficient in and of itself to preclude equitable subrogation, even if the subrogee is a sophisticated party. *See Castleman Constr. Co. v. Pennington*, 432 S.W.2d 669, 676-77 (Tenn. 1968). We therefore conclude that the appellees have clearly failed to present undisputed facts demonstrating culpable negligence on the part of Deutsche Bank and its predecessors. Trustmark and FirstBank are not entitled to summary judgment on this basis.

The appellees are also not entitled to summary judgment simply because Deutsche Bank and its predecessors failed to act prudently to protect their interests. The appellees rely on dictum from this Court's decision in *Banker's Trust Co. v. Collins*, 124 S.W.3d 576 (Tenn. Ct. App. 2003), as conclusively precluding the application of equitable subrogation

---

[12](...continued)
at *7 (Tenn. Ct. App. Mar. 26, 2002), *perm. app. denied* (Tenn. Oct. 21, 2002). In *Dixon*, the subrogee established a right to subrogation because he owed no duty to the bank to perform a title search, to discover pending liens, et cetera. It may follow that a subrogee with actual knowledge of intervening liens, who similarly owes no duty to intervening lienholders, is likewise not guilty of culpable negligence if it extinguishes a debt under the impression it will receive first priority. We need not decide this question, however, because it is not dispositive of the present appeal.

[13]Likewise, the undisputed facts do not demonstrate that Deutsche Bank and its predecessors failed to act upon a mistaken belief that they would occupy first position after extinguishing Ms. Turner's judgment lien. *See Collins*, 124 S.W.3d at 579 (finding that an intended subrogee that did not pay a prior indebtedness through fraud or mistake was not entitled to subrogation to the position of the former encumbrancer). Rather, one of the appellees, FirstBank, impliedly concedes on multiple occasions in its brief that Deutsche Bank and its predecessors are seeking relief from "mistakes." We further note that Trustmark does not argue on appeal that this failure to allege "mistake" is a basis for granting summary judgment, although its brief does state that the original and amended answers filed in this cause do not allege that Long Beach paid Ms. Turner as the result of a mistaken belief that it would occupy the first priority position after release of her lien.

where a party's remedy is in its own hands and it fails to protect its interest.[14] *Collins*, 124 S.W.3d at 579 (citing *Leeper v. Cook*, 688 S.W.2d 94 (Tenn. Ct. App. 1985)). Disallowing equitable subrogation on this sole basis, however, is inconsistent with the *Dixon* decision. As our supreme court explained, "[i]t is indeed difficult to conceive of any form of equitable relief from mistakes where some degree of negligence of the party seeking relief is not involved.'" *Dixon v. Morgan*, 285 S.W. 558, 561 (Tenn. 1926) (quoting *Inst. Bldg. & Loan Ass'n v. Edwards*, 86 A. 962, 965 (N.J. Ch. 1913)). Denial of equitable subrogation simply because a party negligently failed to protect its interests would bar equitable subrogation in virtually every case arising in this context. Because a bright-line rule prohibiting the application of equitable subrogation where a subrogee fails to affirmatively act makes war on both the spirit and the purpose of the doctrine, we decline to adopt it. That is not to say that a court should not consider a party's failure to protect its interest when determining whether to award subrogation; rather, a party's failure to protect its interests despite the opportunity and ability to do so is yet another factor courts should consider when weighing the equities between the parties.

As a final argument in support of summary judgment, Trustmark and FirstBank submit that the undisputed facts establish that application of equitable subrogation would prejudice them. Our supreme court has recognized that subrogation is unavailable "'where it will prejudice the legal or equitable rights of others.'"[15] *Castleman*, 432 S.W.2d at 675 (quoting Couch on Insurance 2d, Subrogation, s 61:21). As we have explained, however, we reject the contention that Trustmark and FirstBank will be deprived of vested statutory rights in the Property, which is the only alleged prejudice cited in this appeal. Although we can conceive of various ways in which an intervening lienholder could demonstrate prejudice, *e.g.*, *Indymac Mortgage Holdings, Inc. v. Kauffman*, No. W2000-01453-COA-R3-CV, 2001 WL 1683779, at *4 (Tenn. Ct. App. Dec. 21, 2001) (finding that subrogation would place the intervening lienholders in a worse position where the subrogee sought subrogation of a new mortgage that imposed a higher interest rate and afforded the mortgagor a longer period during which to repay the outstanding debt), the appellees have not presented undisputed facts to establish such prejudice here, s*ee Holiday Hospitality Franchising, Inc. v. State Resources, Inc.*, 232 S.W.3d 41, 53-54 (Tenn. Ct. App. 2007) (recognizing that a intervening

___

[14]The holding of *Collins* as we read it is that a party which cannot demonstrate a mistaken or fraudulently induced belief that it would occupy the priority position of a prior encumbrancer after satisfying an existing indebtedness is not entitled to equitable subrogation. *See Collins*, 124 S.W.3d at 57.

[15]We need not decide in the present appeal the heretofore unaddressed question of whether Tennessee courts should outright deny equitable subrogation if an intervening lienholder demonstrates any prejudice or merely limit subrogation to the extent of the prior encumbrance if possible. *See Houston v. Bank of Am. Fed. Sav. Bank*, 78 P.3d 71, 75 (Nev. 2003); *E. Boston Sav. Bank v. Ogan*, 701 N.E.2d 331, 334-35 (Mass. 1998).

judgment lienholder would not suffer prejudice as the result of equitably restoring a mistakenly released deed of trust to first priority position); *see also Hicks*, 125 P.3d at 457 (stating that "an intervening lienholder suffers no prejudice merely by virtue of the fact that it is not elevated in priority"); Restatement (Third) of Property (Mortgages) § 7.6 cmt. e (1997) (stating that an intervening lienholder can hardly complain of equitable subrogation, "for it does not harm them, their position is not materially prejudiced, but is simply unchanged"). We therefore disagree with the contention the Trustmark and FirstBank are entitled to summary judgment on this basis.

In conclusion, we hold that Trustmark and FirstBank failed to allege undisputed facts negating an essential element of Deutsche Bank's counterclaim or showing that Deutsche Bank cannot establish an essential element of its counterclaim at trial. We note that Trustmark and FirstBank have repeatedly pointed to the absence of undisputed facts offered in support of Deutsche Bank's position as demonstrating the propriety of summary judgment. It is, however, the duty of the appellees, as the moving parties, to first present undisputed facts demonstrating some deficiency in the nonmoving party's counterclaim. Only then is Deutsche Bank required to produce additional evidence or point to additional facts establishing a genuine issue of material fact. Because Trustmark and FirstBank did not carry their initial burden on this issue, we conclude the trial court erred when it granted summary judgment on Deutsche Bank's counterclaim for equitable subrogation.

Finally, Deutsche Bank asks this Court to grant summary judgment in its favor. This is clearly not one of the "rare cases" in which the nonmoving party has demonstrated a right to summary judgment in its favor. *See Griffis v. Davidson County Metro. Gov't*, 164 S.W.3d 267, 284 (Tenn. 2005) (citing *Thomas v. Transp. Ins. Co.*, 532 S.W.2d 263, 266 (Tenn. 1976)). Although Trustmark and FirstBank failed to carry their initial burden of production, there has been absolutely no showing that Deutsche Bank is entitled to summary judgment as a matter of law on each element of its counterclaim. This argument is without merit.

## V. Conclusion

For the foregoing reasons, we reverse the trial court's grant of summary judgment on Deutsche Bank's counterclaim for equitable subrogation and remand this case for further proceedings. Costs of this appeal are taxed to the appellees, Trustmark National Bank and FirstBank, for which execution may issue if necessary.

_____
DAVID R. FARMER, JUDGE